**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Manuel Pupo-Leyvas, | ) | No. CV 07-1032-PHX-SMM |
| Plaintiff, | ) | **ORDER** |
| vs. | ) | |
| Mark A. Bezy, | ) | |
| Defendant. | ) | |

Currently pending before the Court is Defendant Mark A. Bezy's ("Bezy") Motion to Transfer Venue to the United States District Court for the Southern District of Indiana, Terre Haute Division (Doc. 10), pursuant to 28 U.S.C. § 1404(a). After careful consideration of the arguments advanced by the parties, the Court finds the following.

**Facts**

This action was brought by Plaintiff Manuel Pupo-Leyvas, a political refugee from Cuba, currently residing in Washington, D.C. In his Complaint, Plaintiff raised claims for injuries and damages he allegedly sustained during his incarceration at the United States Penitentiary Terre Haute, Indiana ("USP Terre Haute").(Doc. 1). Plaintiff was an inmate at USP Terre Haute "at all times relevant to the allegations" in his Complaint. *Id.* Plaintiff was released from federal custody to parole on December 12, 2005.(Doc. 10-2). According to

his Complaint,[1] Plaintiff was assaulted during his incarceration by two other inmates who were intoxicated at the time of the assault. Plaintiff alleges that Bezy[2], a former warden at USP Terre Haute, the warden at the time of the assault, and the sole Defendant in this matter, was "deliberately indifferent to Plaintiff's safety" by "knowingly [subjecting] Plaintiff to a substantial risk of serious harm - namely, a significantly understaffed environment in which violent inmates were regularly consuming highly intoxicating alcohol and committing acts of violence against other inmates...." [Doc. 1, ¶ 58].

Plaintiff contends that during his period of detention at USP Terre Haute, the conditions were "unconstitutionally dangerous." On or about May 27, 2005, Plaintiff was severely beaten by two intoxicated inmates in the "E-1 Unit" of the USP Terre Haute, where, at the time, only one corrections officer was on duty. Evidently, that officer was not in a position to observe the attack, and no officer arrived at the scene of the attack until it had ceased. As a result of the attack, Plaintiff suffered extensive injuries, including complete loss of vision in his right eye and substantially impaired vision in his left eye. Six months subsequent to the attack, Plaintiff was released from USP Terra Haute, at which time he moved to Washington D.C., where he continues to reside.

Plaintiff alleges that under Bezy's supervision and management, there was a flourishing prisoner produced alcohol economy at USP Terre Haute, which inevitably led to a culture of pervasive alcohol abuse among the inmate population. Plaintiff further alleges that inmates were able to become intoxicated with such ease that it created a substantial risk of violence among prisoners. It is Plaintiff's contention that, at all relevant times, the prison was insufficiently staffed to protect inmates, thereby exacerbating the risk of violence among prisoners. Plaintiff contends that as warden, Bezy was responsible for ensuring the safety

---

[1] At this stage of the proceedings, the Court must assume all facts taken from Plaintiff's Complaint to be true.

[2] At all times relevant to the allegations in Plaintiff's Complaint, Defendant Mark Bezy was the warden at USP Terre Haute.

- 2 -

of the inmate population and adequacy of staffing of corrections officers. He further contends that Bezy was aware that inmate intoxication and understaffing were significant contributing factors to the insurgence of inmate violence , yet he nevertheless failed to take the appropriate actions to remedy the problems. Bezy was the warden at USP Terre Haute until his retirement in September, 2006. He currently resides in Pinal County, Arizona.

## **Standard of Review**

Section 1404(a) of Title 28 states: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division *where it might have been brought*." 28 U.S.C. § 1404(a). An order denying a motion to transfer venue for the convenience of the parties and witnesses, in the interests of justice, is reviewable for abuse of discretion. 28 U.S.C.A. § 1404(a); *Jones v. GNC Franchising, Inc*., 211 F.3d 495 (9th Cir. 2000) citing *Lou v. Belzberg*, 834 F.2d 730, 734 (9th Cir.1987), *cert. denied*, 485 U.S. 993 (1988). Under § 1404(a), the district court has discretion "to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.' " *Stewart Org. v. Ricoh Corp.,* 487 U.S. 22, 29, (1988). A motion to transfer venue under § 1404(a), requires the district court to weigh multiple factors in its determination of whether transfer is appropriate in a particular case. *Id*.

## **Discussion**

There are two separate requirements of § 1404(a). First, the district to which the defendant is seeking a transfer must be a place where the action originally "might have been brought," and second, the "convenience of parties and witnesses, in the interest of justice" must favor transfer. *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir. 1985).

Thus, the Court will first determine, pursuant to §1404(a), whether the action could have originally been brought in the Southern District of Indiana, Terra Haute. According to 28 U.S.C. § 1391(b),

> A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a **judicial district in which a substantial part of the events or omissions giving rise to the claim occurred**, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b). It is undisputed that the prison within which the violent attacks against Plaintiff allegedly occurred is located in the Southern District of Indiana, Terra Haute. Thus, it is located in the judicial district within which all relevant events or omissions giving rise to Plaintiff's Complaint occurred, pursuant to 28 U.S.C. § 1391(b). Consequently, the first requirement of § 1404(a) is satisfied.[3]

To satisfy the second requirement of § 1404(a), the Court must determine whether Indiana is a more convenient forum than the District of Arizona, Phoenix, and whether a transfer would serve the interests of justice. *Hatch*, 758 F.2d at 414 (9th Cir. 1985).

In determining the convenience of a forum, there are several factors that are weighed by courts to assist them in making the final decision regarding whether the transfer of a case would serve the interests of justice. In particular, the Ninth Circuit considers several private and public interest factors in determining whether the preference accorded to Plaintiff's choice of forum, the United States District Court of Arizona, is outweighed by the burden of litigating in an "inconvenient forum". *See Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). In other words, whether the transfer of a case would serve the interests of justice.

The following is a non-exhaustive list of both private and public factors that this Court

---

[3] Indiana also has personal jurisdiction over Mr. Bezy pursuant to its long-arm statute, Rule 4.4, Indiana Rules of Trial Procedure.

- 4 -

considered[4] in determining whether transfer of forum in the instant case is appropriate pursuant to § 1404(a): (1) the plaintiffs' choice of forum; (2) the extent to which there is a connection between the plaintiffs' causes of action and this forum; (3) the parties' contacts with this forum; (4) the convenience of witnesses; (5) the availability of compulsory process to compel attendance of unwilling non-party witnesses; (6) the ease of access to sources of proof; (7) the existence of administrative difficulties resulting from court congestion; (8) whether there is a "local interest in having localized controversies decided at home"; (9) whether unnecessary problems in conflict of laws, or in the application of foreign law, can be avoided; and (10) the unfairness of imposing jury duty on citizens in a forum unrelated to the action. *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir.2000); *Decker Coal*, 805 F.2d at 843; 28 U.S.C. § 1404(a).

The Court will now analyze several of the factors it weighed in reaching its final decision in the instant case.

**(1)   Convenience to Witnesses and Cost Effectiveness for the Parties to Litigate this Case in Indiana.**

"The relative convenience to witnesses, both party and non-party, is often recognized as the most important factor to be considered in ruling on a motion under § 1404(a). *Saleh v. Titan Corp.*, 361 F.Supp.2d 1152, 1160 (S.D.Cal. 2005) (citation omitted); *International Comfort Products, Inc. v. Hanover House*, 739 F.Supp. 503, 507 (D.Ariz. 1989) (citation omitted). In determining whether the convenience of the particular venue to witnesses weighs in favor of transfer, the court must consider not simply how many witnesses each side has and the location of each, but, rather, the court must consider the importance of the

---

[4] For example, the presence of a forum selection clause is a "significant factor" in the court's § 1404(a) analysis; where a contract is at issue, the location where the relevant agreements were negotiated and executed and the relevant public policy of the forum state is a factor in the § 1404(a) "interest of justice" analysis. *Jones,* 211 F.3d at 498-99; *Stewart*, 487 U.S. at 30.

- 5 -

witnesses. *State Street Capital Corp.*, 855 F.Supp. at 198; *see also Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1335-36 (9th Cir.1984).

Defendant has advised the Court that at a minimum, it expects that at least ten current and former employees, including nine correctional officers and a nurse, will be called to testify about the events in question. Those witnesses all live in Indiana, and consequently, unless this case is transferred to Indiana, they would be forced to travel to Arizona for trial. *See* declaration of Michael S. Romano. Furthermore, in order to adequately defend his case, the Defendant would be forced to bear the costs associated with such a vast amount of travel expenses. Defendants further point out that, most, if not all of the providers who rendered medical care to Plaintiff in Indianapolis, reside in Indiana. Thus, Defendant would have to bear the additional cost of their travel expenses as well to properly defend his case. Such witnesses are not merely significant in number, but are seemingly important to the issues at the heart of this case. Moreover, and obvious to many, without a transfer, Defendant would incur substantial expenses associated with travel back and forth from Indiana to conduct depositions and other pre-trial discovery necessary in defending the case. The Court agrees that the majority, if not all of these expenses could be avoided if this case were to be transferred to Indiana. Accordingly, this factor favors a transfer to Indiana

**(2)     Ease of Access to Sources of Proof**.

Defendant accurately points out that all of the events that gave rise to this lawsuit occurred at USP Terre Haute, and thus, all of the documentary evidence is located in Indiana. Plaintiff has alleged in his Complaint that Mr. Bezy had previous knowledge of certain conditions at the prison, as well as a previous inmate-on-inmate attack that occurred prior to the events involving Plaintiff. Accordingly, the evidence pertaining to such an attack would have remained in Indiana. Moreover, Plaintiff was treated for his resulting injuries at a hospital in Indiana; the evidence pertaining to said treatment would therefore likewise be located in Indiana. Furthermore, Plaintiff has alleged that the correctional officer in his unit,

the same officer who was on duty during the time of the attack, was unable to properly visualize the inmates' activities in their cells. Thus, the discovery that will inevitably occur on this issue will require viewing the facilities, which would be accomplished more efficiently if the case was transferred in Indiana. Accordingly, the Court finds that this factor favors a transfer to Indiana

**(3)     The Arizona Courts Could Not Compel the Attendance of Unwilling Witnesses.**

Defendant correctly points out that a vast majority of the non-employee witnesses presumably reside in Indiana. Thus, those non-employee witnesses are beyond the subpoena power of this Court. According to Defendant, he is the only person with any information pertaining to Plaintiff's claims, who is subject to compulsory process in Arizona. Consequently, this Court would be unable to compel the attendance of relevant and possibly critical witnesses in this case. Thus, the inability of the Court to compel the attendance of certain witnesses would certainly favor transferring the case to Indiana.

**(4)     Arizona Has No Connection to Plaintiff's Cause of Action and There Is No Local Interest in Having this Controversy Decided in Arizona.**

An important factor to be weighed by this Court is the fact that <u>all</u> of the relevant events occurred in Indiana, not in the District of Arizona. Plaintiff has not established any reason that this might be a local controversy that the District of Arizona has an interest in having decided here. Furthermore, Plaintiff is not a resident of this district, and nor does Arizona have any significant local interest in redressing Plaintiff's alleged injuries here, or any specific interest in applying and interpreting Arizona laws in this case. *Cf. Gates Learjet Corp.*, 743 F.2d at 1336 (concluding that the district court failed to properly weigh Arizona's interests in having the controversy "resolved at home" where Arizona had a significant interest in interpreting its own laws and "in protecting its companies from trademark infringement abroad to preserve the state's economic vitality"). Plaintiff currently resides in Washington, D.C., and Defendant Bezy only moved to Arizona after his retirement, which

occurred long after the events at issue occurred. Moreover, the wrongful conduct Plaintiff alleges in his Complaint was confined to the prison in Terre Haute and has no connection to prison conditions in Arizona. There was no argument set forth nor evidence proffered that would specifically implicate Arizona laws, prisons, prisoners, or wardens. Accordingly, this factor favors a transfer to Indiana.

**(5)    Plaintiff's Choice of Forum Is Not Controlling**

Courts generally defer to plaintiff's choice of forum. *Decker Coal*, 805 F.2d at 843. However, when the plaintiff's chosen forum is not his residence, or when the plaintiff's forum lacks a significant connection to the events that gave rise to the Complaint, the deference given to Plaintiff's choice of forum is slight, if any. *See Inherent.com v. Martindale-Hubbell,* 420 F.Supp.2d 1093, 1100 (N.D.Cal. 2006) (motion to transfer venue granted where only connection to chosen forum was the alleged relocation of the plaintiff's business and two witnesses after the events at issue occurred); *Saleh*, 361 F.Supp.2d at 1157-59 (motion to transfer venue granted where foreign plaintiffs failed to demonstrate material connection with chosen forum); *Amazon.com v. Cendant Corp.*, 404 F.Supp.2d 1256 (W.D.Wash. 2005) (noting "where the action has little connection with the chosen forum, less deference is accorded plaintiff's choice, even if plaintiff is a resident of the forum."). As previously articulated, the Plaintiff in the instant case is *not* a resident of Arizona, and there is *no* connection between Arizona and the events that gave rise to this lawsuit. Consequently, the Court finds that little deference or consideration must be paid to Plaintiff's choice of forum, particularly in light of the Court's previous finding that Arizona has no specific interest in having the controversy decided here. The fact that Plaintiff has pro bono counsel to represent him weighs slightly in his favor; however, Defense counsel has accurately noted that convenience of counsel is not a specific factor considered by the Ninth Circuit in making the instant decision regarding transfer of venue. Accordingly, the arguments pertaining to Plaintiff's choice of forum weigh greater in favor of a transfer to

- 8 -

Indiana.

**(6)   Potential Problems in Conflict of Laws Can Be Avoided by Transferring the Case to Indiana.**

The Southern District of Indiana, Terre Haute Division, is located in the Seventh Circuit, while Plaintiff's preferred forum is located in the Ninth Circuit. According to the documents currently in front of the Court, it is not known specifically what conflicts of law may arise during the course of the litigation; however, any potential problems could be entirely avoided by transferring the case to the forum where all of the events occurred and where all, or at least the majority of evidence and witnesses are located. Accordingly, this factor favors a transfer to Indiana.

**(7)   The Court Docket in Arizona Is More Congested than the Docket in the Southern District of Indiana.**

According to the documents presented to this Court, in the District of Arizona, the median time interval for cases to proceed to trial is 31.5 months.  In contrast, in the Southern Division of Indiana, the median time interval is 23.4 months. Thus, the Southern District of Indiana is capable of bringing a civil case to completion in a significantly shorter amount of time than the District of Arizona. *See Gates Learjet Corp.*, 743 F.2d at 1337 ("The real issue is not whether a dismissal will reduce a court's congestion but whether a trial may be speedier in another court because of its less crowded docket.").  Therefore, this factor weighs in favor of transfer to Indiana.

**(8)   It Would Be Unfair to Impose Jury Duty on Arizona Citizens in this Matter**.
After careful consideration, it is clear to the Court that there is no local interest in deciding this controversy here.  Plaintiff is not a resident of this district, the alleged acts that underlie Plaintiff's claims did not occur in this district, and Arizona does not have any significant interest in applying and interpreting its laws in this case. *Cf. Gates Learjet Corp.*, 743 F.2d at 1336 (concluding that the district court failed to properly weigh Arizona's interests in

having the controversy "resolved at home" where Arizona had a significant interest in interpreting its own laws and "in protecting its companies from trademark infringement abroad to preserve the state's economic vitality").  Therefore, given the specific circumstances of this case, the Court finds that forcing Arizona residents to decide this case involving a non-resident Plaintiff who is alleging that his rights were violated in a prison half-way across the country is unnecessary burden on jurors in this district.  Accordingly, this factor favors a transfer to Indiana.

### Conclusion

After consideration of the arguments set forth by both parties and an analysis of the factors promulgated by the Ninth Circuit, the Court finds that the Southern District of Indiana is the more convenient forum, and a transfer to that district would serve the interests of justice.  Accordingly,

**IT IS HEREBY ORDERED GRANTING** Defendant's Motion to Transfer Venue to the United States District Court, Southern District of Indiana, Terre Haute Division (Doc. 10) .

**IT IS FURTHER ORDERED** transferring this case to the United States District Court for the Southern District of Indiana, Terre Haute Division.

DATED this 8th day of May, 2008.

_____
Stephen M. McNamee
United States District Judge

- 10 -