# Exhibit 20

```
 1                UNITED STATES DISTRICT COURT

                 SOUTHERN DISTRICT OF INDIANA

 2                  TERRE HAUTE DIVISION

 3

 4     MANUEL PUPO-LEYVAS,          )

                                    )

 5          Plaintiff,         )

                                    )

 6          vs.              ) CASE NUMBER:

                            ) 2:08-cv-00344-RLY-WGH

 7     UNITED STATES OF AMERICA,    )

                                    )

 8          Defendant.         )

 9                    *   *   *   *   *

10          The deposition upon oral examination of CASE

11     MANAGER KEVIN BEAVER, a witness produced and placed under

12     oath before me, Renee R. Dobson, Registered Merit Reporter,

13     Notary Public in and for the State of Indiana, was taken on

14     December 14, 2009, commencing at 1:15 p.m., at the FCC Terre

15     Haute, U.S. Penitentiary, 4200 Bureau Road North, Terre

16     Haute, Indiana, pursuant to notice and the Federal Rules of

17     Civil Procedure.  This deposition was taken on behalf of the

18     Plaintiff in the above-captioned matter.

19                    *   *   *   *   *

20

21

22

23                CROSSROADS COURT REPORTING

                  Renee R. Dobson, CSR, RMR

24                 9733 Sable Ridge Lane

                  Terre Haute, Indiana 47802

25                   812-299-0442
```

```
 1                 A P P E A R A N C E S

 2

 3     FOR THE PLAINTIFF:

 4          STEPTOE & JOHNSON, LLP
            Suzanne Dallas Reider
 5          Sarah D. Gordon
            1330 Connecticut Avenue, NW
 6          Washington, D.C. 20036
            202-429-3000

 7

 8

 9     FOR THE DEFENDANT:

10          ASSISTANT UNITED STATES ATTORNEY
            SOUTHERN DISTRICT OF INDIANA
11          Thomas E. Kieper
            10 West Market Street, Suite 2100
12          Indianapolis, Indiana 46204
            317-226-6333

13

14

15     FOR THE UNITED STATES FEDERAL BUREAU OF PRISONS,
       FCC TERRE HAUTE:

16

17          Michael Romano
            4200 Bureau Road North
18          Terre Haute, Indiana 47802
            812-238-3476

19

20

21

22

23

24

25
```

1              I N D E X   O F   E X A M I N A T I O N

2                                   PAGE

3     DIRECT EXAMINATION BY MS. REIDER              4

4     CROSS-EXAMINATION BY MR. KIEPER              65

5     REDIRECT EXAMINATION BY MS. REIDER            73

6     RECROSS-EXAMINATION BY MR. KIEPER             78

7     CERTIFICATE PAGE                       80

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1        practice has always been if I'm able to determine this

2        guy has been drinking, I'll take him or have someone

3        come and get him, remove him from the area.  And

4        sometimes those guys aren't drunk at all.  It's just a

5        mistake on my part.

6    Q    Okay.  If you do think that someone has been

7        drinking, is it within your ability to just tell the

8        inmate to go to a cell and sleep it off?

9    A    Yes, I could do that.

10   Q    Okay.

11   A    Yeah, I could--I don't know if it would work, but,

12       yeah, I could--

13   Q    I understand it's not your practice.

14   A    I'm a case manager, not a correctional officer; so,

15       I mean, I could say to an inmate, go lay down.  Whether

16       or not he would do it or not--I don't think I'd be

17       observing him or supervising him.  He would do whatever

18       he wants to do.

19   Q    Okay.

20   A    Most likely not listen to me.

21   Q    Okay.  Did you personally ever see inmates who were

22       intoxicated and not send them to the lieutenant's

23       office?

24   A    I'm not sure.  I'm not sure if that's ever actually

25       happened.  If I feel that someone--if something is

1      fruit; is that correct?

2   A    Yes.

3   Q    Did they contain anything else?

4   A    I didn't look around.  I didn't check it out.  I

5        didn't open the bag up.  It just looked like there was

6        fruit floating in there.

7   Q    Okay.  Is fruit generally what the inmates use to

8        make alcohol?

9   A    No, they generally eat it.

10  Q    They generally eat it?  Okay.  Other than the fruit

11       that the inmates sometimes use to make alcohol, to your

12       knowledge what were the inmates using to make the

13       alcohol?

14       MR. KIEPER:  I'm going to object to that

15       question.  Mischaracterizes the previous answer,

16       but you may answer if you understand the question.

17       MS. REIDER:  Well, he just said he saw a bag

18       of fruit.

19       MR. KIEPER:  But you said they eat.  You said

20       that they use to make alcohol.  There's a

21       difference.

22       MS. REIDER:  Okay.  Let me rephrase the

23       question.

24  Q    Did you understand that they sometimes use fruit to

25       make alcohol?

1    A    Yes, I understand they do use fruit sometimes to

2         make alcohol.

3    Q    Okay.  What else did you understand that they used

4         to make alcohol?

5    A    I understand they can make almost alcohol of

6         anything.

7    Q    Okay.

8    A    Potatoes and tomatoes.  I haven't seen it, but I've

9         heard them talk about it; that the inmates can make it

10        out of tomato paste, grape jelly, and some kind of

11        potato, I think.  I haven't seen these.  I just have

12        correctional officers tell me that they've caught them.

13        This is what it's made out of.

14   Q    Did you understand that they--the inmates used juice

15        to make alcohol?

16   A    I'm sure they can.  My experience has been I've seen

17        that concoction.  It looks like fruit is like the

18        common thing I recall seeing as an alcoholic material,

19        you know.

20   Q    Okay.  Where do you understand that the inmates get

21        the ingredients to make the alcohol?

22   A    Food service in the commissary.

23   Q    One second.  When you say food service, so that I'm

24        clear and so that the record is clear, do you mean

25        mainline?

1   STATE OF INDIANA   )

          ) SS:

2   COUNTY OF VIGO     )

3         I, Renee R. Dobson, a Notary Public in and for

4   said county and state, do hereby certify that the deponent

5   herein was by me first duly sworn to tell the truth, the

6   whole truth and nothing but the truth in the aforementioned

7   matter;

8         That the foregoing deposition was taken on behalf

9   of the Plaintiff; that said deposition was taken at the time

10  and place heretofore mentioned;

11        That said deposition was taken down in Stenograph

12  notes and afterwards reduced to typewriting under my

13  direction and thereafter presented to said witness for

14  signature; and that the typewritten transcript is a true and

15  accurate record of the testimony given by said deponent;

16        I do further certify that I am a disinterested

17  person in this cause of action; that I am not a relative or

18  attorney of any of the parties, or otherwise interested in

19  the event of this cause of action, and am not in the employ

20  of the attorneys for any of the parties.

21        IN WITNESS WHEREFORE, I have hereunto set my hand

22  and affixed my notarial seal this _____ day of

23  _____,2010.

24                        _____

    My Commission Expires:     Renee R. Dobson, Notary Public,

25  September 6, 2015        Residing in Vigo County, Indiana