# Exhibit 21



**U.S. Department of Justice**
Federal Bureau of Prisons

# Change Notice

**DIRECTIVE AFFECTED:** 5270.07
**CHANGE NOTICE NUMBER:** 13
**DATE:** 1/9/2003

**RULES EFFECTIVE:** 12/18/2002

1. **PURPOSE AND SCOPE.** To update Program Statement 5270.07, **Inmate Discipline and Special Housing Units.**

2. **SUMMARY OF CHANGES.** This Change Notice directs the creation of a new Low Moderate Severity Level prohibited act (400 level offense code) for Unauthorized Use of the Mail. Additionally, the Low Moderate Severity Level (400 level offense code) for Unauthorized Use of the Mail or Telephone has been removed since the creation of specific telephone related offenses.

Other changes are:

   a. Establish a new Prohibited Act Offense Code 410 on the list of prohibited acts found under the Low Moderate Category for Unauthorized Use of the Mail and;

   b. Abolish the Prohibited Act Offense Code 406 for Unauthorized Use of the Mail or Telephone on the list of prohibited acts found under the Low Moderate Category.

3. **TABLE OF CHANGES**

| Remove | Insert |
|---|---|
| Chapter 4, Pages 13 and 14 | Chapter 4, Pages 13 and 14 |

4. **ACTION.** File this Change Notice in front of PS 5270.07, **Inmate Discipline and Special Housing Units.**


/s/
Kathleen Hawk Sawyer
Director

U.S. Department of Justice

Federal Bureau of Prisons

CORRECTED COPY 10/13/2000

# Change

# Notice

**DIRECTIVE AFFECTED:** 5270.07
**CHANGE NOTICE NUMBER:** 12
**DATE:** 10/11/2000

**RULES EFFECTIVE:** 11/6/2000

1. **PURPOSE AND SCOPE.** To update Program Statement 5270.07, **Inmate Discipline and Special Housing Units**.

2. **SUMMARY OF CHANGES.** This Change Notice directs the creation of a Greatest Severity Level prohibited act (100 level offense code) for use of the telephone to further any criminal activity, the creation of a High Severity Level prohibited act (200 level offense code) for non-criminal telephone abuses, the creation of a Moderate Severity Level prohibited act (300 level offense code) for non-criminal telephone abuses, and the creation of a Low Moderate prohibited act (400 level offense code) for non-criminal telephone abuses.

Additionally, the Low Moderate Severity Level (400 level Offense code) for Unauthorized Use of the Mail or Telephone has been revised to only apply to mail abuses and the smoking violations are elevated from a Low Moderate Severity Level (400 level offense code) to a Moderate Severity Level prohibited act (300 level offense code).

Other changes are:

  a.  Establish a new Prohibited Act Offense Code 197 on the list of prohibited acts found under the Greatest Category;

  b.  Establish a new Prohibited Act Offense Code 297 on the list of prohibited acts found under the High Category;

  c.  Establish a new Prohibited Act Offense Code 397 on the list of prohibited acts found under the Moderate Category;

  d.  Abolish the Prohibited Act Offense Code 403 and establish the Prohibited Act Offense Code 332 on the list of prohibited acts found under the Moderate Category; and

PS 5270.07
CN 12 10/11/2000

e.  Establish a new Prohibited Act Offense Code 497 on the list of prohibited acts found under the Low Moderate Category and remove the reference to telephone from the Prohibited Act Offense Code 406 to only apply to mail offenses.

3.  **TABLE OF CHANGES**

**Remove**                          **Insert**

Chapter 4, Pages 3 thru 14     Chapter 4, Pages 3 thru 14

4.  **ACTION.**  File this Change Notice in front of PS 5270.07, **Inmate Discipline and Special Housing Units.**


/s/
Kathleen Hawk Sawyer
Director



**U.S. Department of Justice**
Federal Bureau of Prisons

# Change Notice

**DIRECTIVE AFFECTED:** 5270.07
**CHANGE NOTICE NUMBER:** 11
**DATE:** 11/18/98

1.  <u>PURPOSE AND SCOPE</u>.  To limit the co-placement of female and male inmates in Special Housing Units except in an emergency.

2.  <u>SUMMARY OF CHANGES</u>.  The revised policy requires that staff must maintain female and male inmates physically separated in Special Housing Units.  The separation includes but is not  limited to, use as orderlies, work details, exercise, etc.

3.  <u>TABLE OF CHANGES</u>

<u>Remove</u>                              <u>Insert</u>

   Chapter 9, Pages 1 and 2          Chapter 9, Pages 1 - 2A

4.  <u>ACTION</u>.  File this Change Notice in front of Program Statement 5270.07, Inmate Discipline and Special Housing Units.


                                        /s/
                                        Kathleen Hawk Sawyer
                                        Director



**U.S. Department of Justice**
Federal Bureau of Prisons

# Change Notice

**DIRECTIVE AFFECTED:** 5270.07
**CHANGE NOTICE NUMBER:** 10
**DATE:** 7/30/98

1. <u>PURPOSE AND SCOPE</u>.   To ensure Executive Staff has information on the frequency of occurrence of certain prohibited acts through a system of data collection for these prohibited acts.

2. <u>SUMMARY OF CHANGES</u>.  The Executive Staff will have data about certain prohibited acts on which to base comparisons among institutions and security levels through collection of  information on selected prohibited acts, to be aggregated and compared across institutions and security levels for the Executive Staff Module.

3.  <u>TABLE OF CHANGES</u>

| <u>Remove</u> | <u>Insert</u> |
|---|---|
| _____ | Chapter 5, Attachment A |

3.  <u>ACTION</u>.  File this Change Notice in front of Program Statement 5270.07, Inmate Discipline and Special Housing Units.


/s/
Kathleen Hawk Sawyer
Director

**U.S. Department of Justice**
Federal Bureau of Prisons

# Change
# Notice

**DIRECTIVE BEING CHANGED:** 5270.07
**CHANGE NOTICE NUMBER:** 9
**DATE:** 2/18/98

1. <u>PURPOSE AND SCOPE</u>.  To revise Program Statement 5270.07, Inmate Discipline and Special Housing Units to allow Wardens to alter the composition of Unit Discipline Committees in certain circumstances.

2. <u>SUMMARY OF CHANGES</u>.  This Change Notice allows Wardens to designate a single staff member to conduct Unit Discipline Committee hearings in emergency situations.

3. <u>TABLE OF CHANGES</u>

   <u>Remove</u>                           <u>Insert</u>

   Chapter 1, Page 5              Chapter 1, Page 5,

4. <u>ACTION</u>.  File this Change Notice in front of Program Statement 5270.07, Inmate Discipline and Special Housing Units.


                              /s/
                              Kathleen M. Hawk
                              Director

**U.S. Department of Justice**
Federal Bureau of Prisons

# Change Notice

**DIRECTIVE BEING CHANGED:** 5270.07
**CHANGE NOTICE NUMBER:** 08
**DATE:** 9/29/97

**EFFECTIVE DATE:** 11/3/97

1. <u>PURPOSE AND SCOPE</u>.  To revise the Program Statement pertaining to Inmate Discipline and Special Housing Units to reflect changes mandated by the Prison Litigation Reform Act (PLRA) and the Violent Crime Control Act of 1994 (VCCLEA).

2. <u>SUMMARY OF CHANGES</u>.  Chapter 4 and Chapter 5 have been revised to reflect mandated disciplinary sanctions on inmates identified as PLRA or rated as violent under VCCLEA and who are found to have committed prohibited acts.  Changes include:

   a. Requires sanction B.1 be imposed on inmates identified as PLRA or rated as violent under VCCLEA and found to have committed a Greatest or High category prohibited act;

   b. Requires sanction B.1 ordinarily be imposed on inmates identified as PLRA or rated as violent under VCCLEA and found to have committed a Moderate or Low Moderate category prohibited act;

   c. Adds "non-vested good conduct time" to sanction B of the Disciplinary Severity Scale and clarification of "vesting" of Good Conduct Time under sanction B.1;

   d. Lists disallowance rates under sanction B.1;

   e. Abolishes Charge 109 and establishes Charges 111, 112, and 113 on the list of prohibited acts found under the Greatest Category;

   f. Modifies Charge 220 under the High Category list of prohibited acts;

   g. Requires that all 200 level code violations committed by PLRA and VCCLEA inmates rated as violent be referred to the Disciplinary Hearing Officer for disposition, and

PS 5270.07
CN-08 Issued 9/29/97 Effective 11/3/97
Page 2

   i. Establishes that only the Disciplinary Hearing Officer may make the final disposition on a prohibited act contained in the Greatest category or in the High category when the High category prohibited act has been committed by a PLRA or VCCLEA inmate who has been rated as violent.

3. <u>TABLE OF CHANGES</u>

     <u>Remove</u>                  <u>Insert</u>

    Chapter 4 and attachment   Chapter 4 and attachment
    Chapter 5, Pages 1-4       Chapter 5, Pages 1-4

4. <u>ACTION</u>.  File this Change Notice in front of PS 5270.07, Inmate Discipline and Special Housing Units.


                     /S/
                  Kathleen M. Hawk
                  Director

**U.S. Department of Justice**
Federal Bureau of Prisons

# Change Notice

**DIRECTIVE BEING CHANGED:** 5270.07
**CHANGE NOTICE NUMBER:** CN-07
**DATE:** September 4, 1996

Rules Change Effective Date: September 10, 1996

1. <u>PURPOSE AND SCOPE</u>.  To remove references to the United States Penitentiary, Marion as the site of the Bureau's control unit program and replace it with references to the control unit program which is now located at the Administrative MAX-ADX Florence.

2. <u>SUMMARY OF CHANGES</u>.  Previous directive language regarding United States Penitentiary, Marion has been replaced with references to the control unit program.  This Change Notice implements the rules language change under the provisions of 28 CFR 541.22.

3. <u>TABLE OF CHANGES</u>

| <u>Remove</u> | <u>Insert</u> |
|---|---|
| Chapter 9, Pages 7 - 8 (CN-04) | Chapter 9, Pages 7 - 8 (CN-07) |

Changes are indicated by an asterisk (*) before and after new information.

4. <u>ACTION</u>.  File this Change Notice in front of PS 5270.07, Inmate Discipline and Special Housing Units.

\s\
Kathleen M. Hawk
Director



**U.S. Department of Justice**
Federal Bureau of Prisons

# Change
# Notice

**DIRECTIVE BEING CHANGED:** 5270.07
**CHANGE NOTICE NUMBER:** CN-06
**DATE:** November 3, 1995

1.  <u>PURPOSE AND SCOPE</u>.  This Change Notice to P.S. 5270.07, Inmate Discipline and Special Housing Units, has been prepared to revise and clarify the requirements for documentation and use of references to significant prohibited acts which are not supported by disciplinary actions and hearings.

2.  <u>SUMMARY OF CHANGES</u>.  The revised policy requires that staff may still maintain references to significant prohibited acts which are not supported by disciplinary actions and hearings in an inmate's central file for use by staff in making classification, administrative transfer and other decisions involving the security and good order of the institution if the following conditions are met:

   a.  References included in an inmate's central file must be maintained in an accurate manner.  For example, an inmate suspected of being involved in an escape attempt who was never found to have committed a violation of institution disciplinary regulations or was never charged with an offense due to a lack of evidence would have to have this lack of evidence noted in any reference to his alleged involvement in the escape attempt.

   b.  Placement of a reference to 100 or 200 severity level offenses not supported by disciplinary action in an inmate's central file may only be done with the written approval of the Warden of the institution where the incident occurred.  The Warden's written approval must be documented in the inmate's central file.  Approval of the Warden will signify that in the Warden's judgment this information is necessary for the proper management of the inmate.

3.  <u>TABLE OF CHANGES</u>

|                Remove                |                Insert                |
| ------------------------------------ | ------------------------------------ |
| Chapter 7, Pages 7-9 (CN-05) (09/29/94) | Chapter 7, Pages 7-9 |

P.S. 5270.07
CN-06, November 3, 1995
Page 2

4.  <u>ACTION</u>.  File this Change Notice in front of Program Statement 5270.07.


                              \s\
                              Kathleen M. Hawk
                              Director



**U.S. Department of Justice**
Federal Bureau of Prisons

# Change
# Notice

**DIRECTIVE BEING CHANGED:** 5270.07
**CHANGE NOTICE NUMBER:** CN-05
**DATE:** September 29, 1994

1.  <u>PURPOSE AND SCOPE</u>. This Change Notice to P.S. 5270.07, Inmate Discipline and Special Housing Units, has been prepared to:

   a.  Revise and clarify the requirement for inmate discipline certification of staff sitting on the Unit Discipline Committee; and

   b.  Revise the procedures for documenting disciplinary information.

2.  <u>SUMMARY OF CHANGES</u>.  The requirement for staff to pass an inmate discipline certification test prior to sitting on a Unit Discipline Committee (UDC) has been replaced with a requirement to pass a self-study program.  Each institution is required to appoint a UDC Trainer.  The UDC staff member must successfully complete a series of training modules prior to certification. Several of the modules involve computer based training (CBT) review exercises.  The UDC Trainer will monitor the progress of staff participating in the self-study program.

With the advent of the SENTRY inmate discipline module, the Chronological Disciplinary Record (CDR) form is no longer needed. This information is to be keyed into SENTRY, using appropriate transactions.  The CDR form in an inmate's central file is only required for incident report data prior to December 1, 1990.  A copy of the SENTRY CDR is not required to be maintained in the central file.

3.  <u>TABLE OF CHANGES</u>.

| <u>Remove</u> | <u>Insert</u> |
|---|---|
| Chapter 1, pages 1-4 (12/29/87) | Chapter 1, pages 1-5 |
| Chapter 5, pages 3-4 (12/29/87) | Chapter 5, pages 3-4 |

```
                                        P.S. 5270.07
                              CN-05, September 29, 1994
                                             Page 2
```

Chapter 6, pages 1-4 (12/29/87)        Chapter 6, pages 1-5

Chapter 7, page 7 (12/29/87)           Chapter 7, page 7

Chapter 7, page 8 (CN-01) (10/12/88)   Chapter 7, pages 8 and 9

Changes are indicated by an asterisk (*) before and after new information.

4.  <u>ACTION</u>.  File this Change Notice in front of Program Statement 5270.07.


                              \s\Wade B. Houk for\
                              Kathleen M. Hawk
                              Director

**U.S. Department of Justice**
Federal Bureau of Prisons

# Change Notice

**DIRECTIVE BEING CHANGED:** 5270.07
**CHANGE NOTICE NUMBER:** CN-04
**DATE:** August 20, 1993

1.  <u>PURPOSE AND SCOPE</u>. This Change Notice has been prepared to:

  a.  Update institution security level nomenclature making the terminology consistent with that used in the Security Designation and Custody Classification System; and

  b.  Update and clarify the Bureau's policy on the loss of privilege sanction.

2.  <u>SUMMARY OF CHANGES</u>. Publication of the new Security Designation and Custody Classification Manual changed the Bureau's institution Security Levels.  Previously, the Bureau ranked many of its institutions according to six Security Levels ranging from Security Level 1 (lowest security) to Security Level 6 (highest security).  Other special purpose institutions, not rated according to Security Level, were called "Administrative." The Bureau has collapsed those seven classifications into five: Minimum, Low, Medium, High, and Administrative.

Previous policy language regarding the loss of privilege sanction has been the subject of concern and/or misinterpretation, given the increase in the application of this sanction.  The substantial rise in the use of the loss of privilege sanction is primarily because of the absence of other appropriate (effective) sanctions.  This Change Notice affirms the rules language change under provisions of 28 CFR 541.13 and provides clarification to the Bureau's position on this issue.

2.  <u>TABLE OF CHANGES</u>.

| Remove | Insert |
|---|---|
| P.S. 5270.7, Chapter 4, page 3, dated October 12, 1988 | P.S. 5270.7, Chapter 4, page 3 CN-4 |
| P.S. 5270.7, Chapter 4, page 4, dated December 29. 1987 | P.S. 5270.7, Chapter 4, page 4 CN-4 |

P.S. 5270.7, Chapter 4,                    P.S. 5270.7, Chapter 4,
page 5, dated October 12, 1988             page 5 CN-4

P.S. 5270.7, Chapter 4,                    P.S. 5270.7, Chapter 4,
page 6, dated December 29, 1987            page 6 CN-4

P.S. 5270.7, Chapter 4,                    P.S. 5270.7, Chapter 4,
pages 15 and 16, dated Oct 12, 1988        pages 15 and 16 CN-4

P.S. 5270.7, Chapter 4,                    P.S. 5270.7, Chapter 4,
pages 17 and 17A, dated  Mar 4, 1991       pages 17 and 17A CN-4

P.S. 5270.7, Chapter 9,                    P.S. 5270.7, Chapter 9,
pages 5-7, dated December 29, 1987         pages 5-7 CN-4

P.S. 5270.7, Chapter 9,                    P.S. 5270.7, Chapter 9,
pages 8 and 8.1, dated June 30, 1992       pages 8 and 8A CN-4

Changes are indicated by an asterisk (*) before and after new information.

3.  <u>ACTION</u>:  File this Change Notice in front of Program Statement 5270.7.


                              \s\
                         Kathleen M. Hawk
                         Director

**U.S. Department of Justice**
Federal Bureau of Prisons

# Change
# Notice

**DIRECTIVE BEING CHANGED:** 5270.07
**CHANGE NOTICE NUMBER:** CN-03
**DATE:** June 30, 1992

1.  <u>PURPOSE</u>:  This Change Notice has been prepared in order to clarify the Bureau's use of the Administrative Detention Order form in detailing the reasons for placing an inmate in administrative detention.

2.  <u>SUMMARY OF CHANGES</u>:  A special form in memorandum format entitled Administrative Detention Order is used by the Warden to detail the reasons for placing an inmate in administrative detention.  In order to clarify that no other memorandum is required, this Change Notice substitutes the words "Administrative Detention Order" or "order", as appropriate, for "memorandum".

3.  <u>TABLE OF CHANGES</u>:

      <u>Remove</u>                          <u>Insert</u>

      P.S. 5270.7, page 8          P.S. 5270.7, pages 8-8.1, CN-3

4.  <u>ACTION</u>:  File this Change Notice in front of Program Statement 5270.7.

                      \s\
J. MICHAEL QUINLAN
Director

**U.S. Department of Justice**
Federal Bureau of Prisons

# Change Notice

**DIRECTIVE BEING CHANGED:** 5270.07
**CHANGE NOTICE NUMBER:** CN-02
**DATE:** March 4, 1991

1.  <u>SUMMARY CHANGE</u>.  To provide guidance on imposing a loss of privilege sanction (e.g., loss of visiting privileges) not directly related to the offense.

2.  <u>TABLE OF CHANGES</u>:

<u>Remove</u>                              <u>Insert</u>

Page 17, 5270.7                       Pages 17 and 17a, 5270.

3.  File this Change Notice in front of Program Statement 5270.7.

                                        \s\
                                        J. MICHAEL QUINLAN
                                        Director

**U.S. Department of Justice**
Federal Bureau of Prisons

# Change
# Notice

**DIRECTIVE BEING CHANGED:** 5270.07
**CHANGE NOTICE NUMBER:** CN-01
**DATE:** October 12, 1988

**EFFECTIVE DATE:** November 16, 1988

1.  <u>PURPOSE</u>.  To include within Program Statement 5270.7, Inmate Discipline and Special Housing Units, procedures for the disallowance of good conduct time credit.

2.  <u>BACKGROUND</u>.  Inmates committed under the Sentencing Reform Act provisions of the Comprehensive Crime Control Act are not eligible for stationary good time.  Inmates sentenced for offenses committed on or after November 1, 1987 are eligible to receive a maximum of 54 days off good conduct time credit per year (18 U.S.C. §3624(b)).  This credit is given at the end of each year of time served and, once given, is vested.  The disallowance of this credit is determined by the Bureau's Disciplinary Hearing Officer (DHO) based on an inmate being found to have committed a prohibited act.  The decision of the DHO is final, and is subject only to procedural review by the Warden and by inmate appeal through the Administrative Remedy procedures. This Change Notice places into the inmate discipline policy the necessary information to accomplish this objective.

3.  <u>TABLE OF CHANGES</u>:

|       <u>Remove</u>       |       <u>Insert</u>       |
| --- | --- |
| From Table of Contents: | Into Table of Contents: |
| Page i | Page i |
| From Chapter 4: | Into Chapter 4: |
| Page 1 | Page 1, CN-1 |
| Page 3 | Page 3, CN-1 |
| Page 5 | Page 5, CN-1 |
| Page 8 | Page 8, CN-1 |
| Pages 11 - 17 | Pages 11 -17, CN-1 |
| ------ | Appendix, CN-1 |
| From Chapter 7: | Into Chapter 7: |
| Page 8 | Page 8, CN-1 |

4.  File this Change Notice in front of Program Statement 5270.7, Inmate Discipline and Special Housing Units.


                                        \s\
                                J. Michael Quinlan
                                Director



**U.S. Department of Justice**
Federal Bureau of Prisons

# Program Statement

**OPI:** CPD/CORR
**NUMBER:** 5270.07
**DATE:** December 29, 1987
**SUBJECT:** Inmate Discipline and Special Housing Units

This Program Statement transmits policies and procedures prescribed for Inmate Discipline and Special Housing Units. This Program Statement becomes effective January 4, 1988. This effective date means that the new rules and procedures will apply to the processing of all acts of misconduct committed at and after 12:01 a.m. on January 4, 1988.

                                        \s\
                              J. MICHAEL QUINLAN
                              Director

**[Bracketed Bold - Rules]**
Regular Type - Implementing Information

NOTE:  ONLY SIGNIFICANT CHANGES IN THE FORMER PROGRAM STATEMENT ON INMATE DISCIPLINE (P.S. 5270.6) ARE INDICATED BY THE FOLLOWING SYMBOL:*

P.S. 5270.07
CN-01, October 12, 1988
Table of Contents, Page i

INMATE DISCIPLINE AND SPECIAL HOUSING UNITS

TABLE OF CONTENTS

Chapter #              Subject                                Pages

1. . . . .INTRODUCTION  . . . . . . . . . . . . . . .  Ch. 1, 1-4

2. . . . .NOTICE TO INMATE OF BUREAU OF PRISONS RULES  Ch. 2, 1-3

      Table 1 - Summary of Disciplinary System . . . . .  Ch. 2, 2

      Table 2 - Time Limits in Disciplinary Process  . .  Ch. 2, 3

3. . . . .INMATE RIGHTS AND RESPONSIBILITIES  . . . .  Ch. 3, 1-2

4. . . . .PROHIBITED ACTS AND DISCIPLINARY SEVERITY
          SCALE . . . . . . . . . . . . . . . . . . . . Ch. 4, 1-20

Table 3 - Prohibited Acts and Disciplinary
          Severity Scale  . . . . . . . . . . . . . . Ch. 4, 3-12

          Greatest Category
          High Category
          Moderate Category
          Low Moderate Category

Table 4 - Sanctions . . . . . . . . . . . . . . . . Ch. 4, 13-17

Table 5 - Sanctions for Repetition of
          Prohibited Acts Within Same Category  . . . . Ch. 4, 18

Table 6 - Sanctions by Severity of
          Prohibited Act, with Eligibility
          For Restoration of Forfeited and
          Withheld Statutory Good Time  . . . . . . Ch. 4, 19-20

          Disallowance of Good Conduct Time  . . . . . Ch. 4, Appendix

5. . . . .INCIDENT REPORT . . . . . . . . . . . . . . Ch. 5, 1-4

          Incident Report.
          Investigation.

          Chronological Disciplinary Record BP-322(52) Ch. 5, Appendix

6. . . . .INITIAL HEARING . . . . . . . . . . . . . . Ch. 6, 1-4

P.S. 5270.07
December 29, 1987
Table of Contents, Page ii

TABLE OF CONTENTS (cont'd)

Chapter #        Subject                                    Pages

7. . . . . .DISCIPLINE HEARING OFFICER  . . . . . . . . Ch. 7, 1-8

        Establishment and Functioning of the
            Discipline Hearing Officer.
        Procedures before the Discipline
            Hearing Officer.
        Dispositions of the Discipline
            Hearing Officer.

        Checklist for DHO Actions . . . . . . Ch. 7, Appendix 1

        Confidential Informant Information  . Ch. 7, Appendix 2

8. . . . .APPEALS OF DISCIPLINARY HEARING ACTIONS . . Ch. 8, 1-2

9. . . . .SPECIAL HOUSING UNITS . . . . . . . . . . Ch. 9, 1-11

        Disciplinary Segregation . . . . . . . . Ch. 9, 1-5

        Justification for Placement in
            Disciplinary Segregation and
        Review of Inmates in Disciplinary
            Segregation.
        Conditions of Disciplinary Segregation.

        Administrative Detention . . . . . . . . . . Ch. 9, 6-10

        Administrative Detention.
            Placement in Administrative Detention.
            Memorandum Detailing Reasons for
                Placement.
            Review of Inmates Housed in
            Administrative Detention.
            Conditions of Administrative Detention.

        Protection Cases . . . . . . . . . . . . . Ch. 9, 10-11

        Personal Property Ordinarily Allowed in
            Administrative Detention  . . . . . . . Ch. 9, Appendix

TABLE OF CONTENTS (cont'd)

| Chapter # | Subject | Pages |
|---|---|---|
| 10. | RECORDS AND FORMS | Ch. 10, 1-15 |

Incident Report BP-288(52).
Inmate Rights at Discipline Hearing
   BP-293(52).
Notice of Discipline Hearing Before the
   Discipline Hearing Officer (DHO) BP-294(52).
Duties of Staff Representative BP-306(52).
Waiver of Appearance BP-307(52).
Discipline Hearing Officer(DHO) Report BP-304(52)
Administrative Detention Order BP-308(52).
Special Housing Unit Record BP-292(52).
Special Housing Review BP-295(52)
Temporary Placement in Disciplinary Segregation
   Order BP-321(52).

| Chapter # | Subject | Pages |
|---|---|---|
| 11. | REFERENCES | Ch. 11, 1-2 |

Correctional Standards Reflected in Program Statement.

CHAPTER 1

INTRODUCTION

1. [**PURPOSE AND SCOPE** § 541.10

   **a.  So that inmates may live in a safe and orderly environment, it is necessary for institution authorities to impose discipline on those inmates whose behavior is not in compliance with Bureau of Prisons rules.  The provisions of this rule apply to all persons committed to the care, custody, and control (direct or constructive) of the Bureau of Prisons.]**

   Examples of persons to whom this policy applies include, but are not limited to, an inmate who is on pretrial status, or on writ, or on escorted trip or furlough, or who is escorted by U. S. Marshals or other federal law enforcement officials, or who is in a camp, contract facility, (other than contract CCCs) or hospital, or who is returned to Bureau custody from a contract facility (includes contract CCCs).  These provisions do not apply to a federal inmate designated to a non-federal facility (e.g., inmates serving Federal sentences in state facilities or contract CCCs).

   **[b.  The following general principles apply in every disciplinary action taken:**

      **(1)  Only institution staff may take disciplinary action.]**

   The term institution staff ordinarily refers to Bureau of Prisons employees.  Any exception to this provision may be made only with the Regional Director's prior written approval.

   In contract CCCs, Community Corrections Managers have the authority to take disciplinary action as specified in the Community Corrections Manual.

      **[(2)  Staff shall take disciplinary action at such times and to the degree necessary to regulate an inmate's behavior within Bureau rules and institution guidelines and to promote a safe and orderly institution environment.**

      **(3)  Staff shall control inmate behavior in a completely impartial and consistent manner.**

      **(4)  Disciplinary action may not be capricious or retaliatory.**

      **(5)  Staff may not impose or allow imposition of corporal punishment of any kind.]**

**[(6)  If it appears at any stage of the disciplinary process that an inmate is mentally ill, staff shall refer the inmate to a mental health professional for determination of whether the inmate is responsible for his conduct or is incompetent.  Staff may take no disciplinary action against an inmate whom mental health staff determines to be incompetent or not responsible for his conduct.**

**(a)  A person is not responsible for his conduct if, at the time of the conduct, the person, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his acts.  When a person is determined not responsible for his conduct, the Incident Report is to show as a finding that the person did not commit the prohibited act because that person was found not to be mentally responsible for his conduct.]**

\*         The Incident Report is to be retained in the inmate central file.  The Discipline Hearing Officer (DHO) or the Unit Discipline Committee (UDC), if it takes final action, shall enter the DHO or UDC finding that the person was not responsible for his conduct into SENTRY in the inmate's Chronological Disciplinary Record.                                             \*

**[(b)  A person is incompetent if that person lacks the ability to understand the nature of the disciplinary proceedings, or to assist in his defense at the proceedings.  When a person is determined incompetent, the disciplinary proceedings shall be postponed until such time as the inmate is able to understand the nature of the disciplinary proceedings and to assist in his defense at those proceedings.  If competency is not restored within a reasonable period of time, the Incident Report is to show as a finding that the inmate is incompetent to assist in his or her defense at the disciplinary proceedings.]**

\*         The Incident Report is to be retained in the inmate central file.  The DHO or the UDC chairman shall record the finding that the person was determined incompetent into SENTRY in the inmate's Chronological Disciplinary Record.              \*

It is generally the UDC which initiates referral to the appropriate mental health professional.  Where this occurs, the completed mental health evaluation is to be returned to the UDC. The UDC will then decide whether the incident may be handled by the UDC (other than greatest severity), or whether it should be referred to the DHO.  In Greatest Severity cases  (see Chapter 4), the UDC may refer an inmate for a mental health evaluation concurrently with the required referral to the Discipline Hearing Officer.  The completed evaluation is to be returned to the UDC, who will then forward it to the DHO.

    (7)  Accurate, detailed reports of disciplinary actions shall be maintained in accordance with the requirements of this Program Statement.

2.  <u>DIRECTIVES AFFECTED</u>

  a.  <u>Directive Rescinded</u>

    P.S. 5270.06   Inmate Discipline and Special Housing Units (10/01/81)

\*   b.  <u>Directives Referenced</u>

| | |
|---|---|
| P.S. 1315.05 | Inmate Legal Activities (06/13/94) |
| P.S. 1330.11 | Administrative Remedy Procedure for Inmates (10/29/93) |
| P.S. 2000.02 | Accounting Management Manual (10/15/86) |
| P.S. 4500.03 | Trust Fund Management Manual (04/04/89) |
| P.S. 4700.03 | Food Service Manual (06/10/91) |
| P.S. 5100.05 | Security Designation and Custody classification System (06/16/94) |
| P.S. 5180.03 | Central Inmate Monitoring System (09/14/90) |
| P.S. 5212.05 | Control Unit Programs (08/14/84) |
| P.S. 5215.04 | Youth Corrections Act (YCA) Institutions and Programs (09/23/93) |
| P.S. 5264.05 | Telephone Regulations for Inmates (04/25/94) |
| P.S. 5265.08 | Correspondence (10/01/85) |
| P.S. 5267.05 | Visiting Regulations (07/21/93) |
| P.S. 5322.09 | Classification and Program Review of Inmates (03/10/94) |
| P.S. 5360.05 | Religious Beliefs and Practices of Committed Offenders (12/14/84) |
| P.S. 5380.02 | Financial Responsibility Program, Inmate (05/15/91) |
| P.S. 5500.05 | Correctional Services Manual (06/01/93) |
| P.S. 5507.01 | Constitutional Requirements in the Investigation of Institution Crime (02/19/68) |
| P.S. 5521.04 | Searches of Housing Units, Inmates, and Inmate Work Areas (05/06/91) |
| P.S. 5550.04 | Escape from Extended Limits of Confinement (07/13/89) |
| P.S. 5580.02 | Personal Property (04/27/83) |
| P.S. 5880.28 | Sentence Computation Manual (02/21/94) |
| P.S. 5880.30 | Sentence Computation Manual (07/16/93) |
| P.S. 7300.08 | Community Corrections Manual (04/01/91) |
| P.S. 7331.02 | Pretrial Inmates (11/10/80)         \* |

  c.  Rules cited in this Program Statement are contained in 28 CFR § 541.2 and §§ 541.10-23.

```
                                          P.S. 5270.07
                              CN-05, September 29, 1994
                                   Chapter 1, Page 4
```

3.   <u>STANDARDS REFERENCED</u>

\*     a. American Correctional Association Foundation/Core Standards
for Adult Correctional Institutions: FC2-4056, FC2-4057, FC2-
4058, FC2-4059, FC2-4061, FC2-4062, FC2-4084, FC2-4085, C2-4098,
C2-4099, C2-4100, C2-4101, C2-4102, C2-4103, C2-4104, C2-4105,
C2-4106, C2-4107, C2-4108, C2-4110, C2-4111, C2-4112, C2-4113,
C2-4175, C2-4176, C2-4177, C2-4178, C2-4179, C2-4180, C2-4181,
C2-4182, C2-4183, C2-4184, C2-4185, C2-4186, C2-4187, C2-4188,
C2-4189, C2-4190, C2-4391, C2-4392, C2-4393, C2-4394, C2-4395,
C2-4396;

     b.  American Correctional Association 3rd Edition Standards for
Adult Correctional Institutions: 3-4214, 3-4215, 3-4216, 3-4217,
3-4218, 3-4219, 3-4220, 3-4221, 3-4222, 3-4223, 3-4226, 3-4227,
3-4228, 3-4229, 3-4230, 3-4231, 3-4232, 3-4233, 3-4234, 3-4236,
3-4237, 3-4238, 3-4239, 4-3240, 3-4241, 3-4242, 3-4243, 3-4244,
3-4246, 3-4248, 3-4249, 3-4250, 3-4251, 3-4253, 3-4254, 3-4255,
3-4256, 3-4257, 3-4258, 3-4259, 3-4260, 3-4261;

     c.  American Correctional Association Foundation/Core Standards
for Adult Local Detention Facilities: FC2-5057, FC2-5058, FC2-
5059, FC2-5093, C2-5139, C2-5140, C2-5141, C2-5142, C2-5143, C2-
4144, C2-5146, C2-5147, C2-5148, C2-5149, C2-5150, C2-5151, C2-
5152, C2-5153, C2-5154, C2-5155, C2-5156, C2-5201, C2-5202, C2-
5203, C2-5204, C2-5205, C2-5206, C2-5207, C2-5208, C2-5210, C2-
5211, C2-5212, C2-5213, C2-5214, C2-5215, C2-5216, C2-5217;

     d.  American Correctional Association 3rd Edition Standards for
Adult Local Detention Facilities: 3-ALDF-3C-01, 3C-02, 3C-03, 3C-
04, 3C-05, 3C-06, 3C-07, 3C-08, 3C-09, 3C-10, 3C-11, 3C-12, 3C-
13, 3C-14, 3C-15, 3C-16, 3C-17, 3C-18, 3C-19, 3C-20, 3C-21, 3C-
22, 3D-01, 3D-02, 3D-03, 3D-04, 3D-05, 3D-06, 3D-07, 3D-09, 3D-
11, 3D-12, 3D-13, 3D-14, 3D-15, 3D-16, 3D-17, 3D-18, 3D-19, 3D-
20, 3D-21, 3D-22, 3D-23, 3D-24.                              \*

4.   **[<u>DEFINITIONS</u> § 541.2**

   **a.  <u>Investigating Officer</u>.  The term Investigating Officer
refers to an employee of supervisory level who conducts the
investigation concerning alleged charge(s) of inmate misconduct.
The Investigating Officer may not be the employee reporting the
incident, or one who was involved in the incident in question.]**

   For the purposes of this rule, the Investigating Officer is
ordinarily a Lieutenant, but the Warden at each institution may
appoint another staff member to perform this function.

**[b.   Unit Discipline Committee (UDC).   The term Unit Discipline Committee (UDC) refers to one or more institution staff members delegated by the Warden the authority and duty to hold an initial hearing upon completion of the investigation concerning alleged charge(s) of inmate misconduct.   The Warden shall authorize these staff members to impose minor sanctions (G through P) for violation of prohibited act(s).]**

\*      In institutions with Unit Management, the authority to hold initial hearings (UDC) and impose sanctions is ordinarily delegated to the staff members of the inmate's unit team. Wardens shall delegate two or more staff members the authority to hold initial hearings and impose minor sanctions.  In emergency situations the Warden may delegate one staff member the authority to hold initial hearings and impose minor sanctions.            \*

**[c.   Discipline Hearing Officer (DHO).   This term refers to a one-person, independent, discipline hearing officer who is responsible for conducting Institution Discipline Hearings and who imposes appropriate sanctions for incidents of inmate misconduct referred for disposition following the hearing required by § 541.15 before the UDC.]**

The Discipline Hearing Officer may be assigned to one institution or may be responsible for conducting institution discipline hearings at several different institutions.

References to the Institution Discipline Committee in other policy issuances will be read to refer to the Discipline Hearing Officer until those issuances are redone.

**[d.   Segregation Review Official (SRO).   The term Segregation Review Official refers to the individual at each Bureau of Prisons institution assigned to review the status of each inmate housed in disciplinary segregation and administrative detention as required in §§ 541.20 and 541.22 of this rule.]**

§ 541.20 and 541.22 are located in Chapter 9 of this Program Statement.  The SRO must be trained to conduct the required reviews and must be certified in inmate discipline matters.  The SRO does not have to be DHO certified.  Ordinarily, the Segregation Review Official will be the Captain.

## CHAPTER 2

### NOTICE TO INMATE OF BUREAU OF PRISONS RULES

**1.   [NOTICE TO INMATE OF BUREAU OF PRISONS RULES §541.11.   Staff shall advise each inmate in writing promptly after arrival at an institution of:**

**a.   The types of disciplinary action which may be taken by institution staff;**

**b.   The disciplinary system within the institution and the time limits thereof (see Tables 1 and 2)];**

Tables 1 and 2 are located on pages 2 and 3 of this Chapter.

**[c.   The inmate's rights and responsibilities (see §541.12);]**

See Chapter 3 for the list of inmate rights and responsibilities.

**[d.   Prohibited acts and disciplinary severity scale (see §541.13, Tables 3, 4, and 5); and]**

Tables 3, 4, and 5 are located on pages 3, 13, & 18 of Chapter 4.

**[e.   Sanctions by severity of prohibited act, with eligibility for restoration of forfeited and withheld statutory good time (see Table 6).]**

Table 6 is located on page 19 of Chapter 4.

2.   PAMPHLET - The information identified in paragraph (1)(a)through (e) of this Chapter is to be provided in pamphlet form to each inmate as part of the institution's admission and orientation program.  A signed receipt is to be obtained from each inmate acknowledging that a copy of the pamphlet was received.

To the extent reasonably available, a qualified staff member or translator is to help the inmate who has a language or literacy problem obtain an understanding of Bureau rules on inmate discipline. When a significant portion of the inmate population speaks a language other than English, the pamphlet of rules is to be made available in that language.

P.S. 5270.07
December 29, 1987
Chapter 2, Page 2


[<u>SUMMARY OF DISCIPLINARY SYSTEM</u>

Table 1

P.S. 5270.07
December 29, 1987
Chapter 2, Page 3

[TIME LIMITS IN DISCIPLINARY PROCESS

TABLE 2



1. **Staff becomes aware of inmate's involvement in incident.**

   ordinarily maximum of 24 hours

2. **Staff gives inmate notice of charges by delivering Incident Report.**

   maximum ordinarily of 3 work days from the time staff became aware of the inmate's involvement in the incident. (Excludes the day staff become aware of the inmate's involvement, weekends, and holidays.)

3. **Initial hearing (UDC)**

   minimum of 24 hours (unless waived)

4. **Discipline Hearing Officer (DHO) Hearing**


NOTE:   These time limits are subject to exceptions as provided in the rules.

Staff may suspend disciplinary proceedings for a period not to exceed two calendar weeks while informal resolution is undertaken and accomplished.  If informal resolution is unsuccessful, staff may reinstitute disciplinary proceedings at the same stage at which suspended.  The requirements then begin running again, at the same point at which they were suspended.]

P.S. 5270.07
December 29, 1987
Chapter 3, Page 1

CHAPTER 3

[INMATE RIGHTS AND RESPONSIBILITIES §541.12

| RIGHTS | RESPONSIBILITIES |
|---|---|
| 1. You have the right to expect that as a human being you will be treated respectfully, impartially, and fairly by all personnel. | 1. You have the responsibility to treat others, both employees and inmates, in the same manner. |
| 2. You have the right to be informed of the rules, procedures, and schedules concerning the operation of the institution. | 2. You have the responsibility to know and abide by them. |
| 3. You have the right to freedom of religious affiliation, and voluntary religious worship. | 3. You have the responsibility to recognize and respect the rights of others in this regard. |
| 4. You have the right to health care, which includes nutritious meals, proper bedding and clothing, and a laundry schedule for cleanliness of the same, an opportunity to shower regularly, proper ventilation for warmth and fresh air, a regular exercise period, toilet articles and medical and dental treatment. | 4. It is your responsibility not to waste food, to follow the laundry and shower schedule, maintain neat and clean living quarters, to keep your area free of contraband,and to seek medical and dental care as you may need it. |
| 5. You have the right to visit and correspond with family members, and friends, and correspond with members of the news media in keeping with Bureau rules and institution guidelines. | 5. It is your responsibility to conduct yourself properly during visits, not to accept or pass contraband, and not to violate the law or Bureau rules or institution guidelines through your correspondence. |
| 6. You have the right to unrestric- and confidential access to the courts by correspondence (on matters such as the legality of your conviction, civil matters, pending criminal cases, and conditions of your imprisonment.) | 6. You have the responsibility to present honestly and fairly your petitions, questions, and problems to the court. |

7.   **You have the right to legal counsel from an attorney of your choice by interviews and correspondence.**

7.   **It is your responsibility to use the services of an attorney honestly and fairly.]**

P.S. 5270.07
December 29, 1987
Chapter 3, Page 2

|  [RIGHTS | RESPONSIBILITIES |
|---|---|
| 8.  You have the right to parti-cipate in the use of law library reference materials to assist you in resolving legal problems. You also have the right to receive help when it is available through a legal assistance program. through a legal assistance program. | 8.  It is your responsibility to use these resources in keeping with the procedures and schedule prescribed and to respect the rights of other inmates to the use of the materials and assistance. |
| 9.  You have the right to a wide range of reading materials for materials for educational purposes and for your own enjoyment. These materials may include magazines and newspapers sent from the commun-ity, with certain restrictions. | 9.  It is your responsibility to seek and utilize such materials for your personal benefit, without depriving others of their equal rights to the use of this material. |
| 10.  You have the right to participate in education, vocational training and employment as far as resources are available, and in keeping with your interests, needs, and abilities. | 10.  You have the responsibility to take advantage of activities which may help you live a successful and law-abiding life within the institution and in the community.  You will be expected to abide by the regulations governing the use of such activities. |
| 11.  You have the right to use your funds for commissary and other purchases, consistent with insti-tutuion security and good order, for opening bank and/or savings accounts, and for assisting your family. | 11.  You have the responsibility to meet your financial and legal obligations, including, but not limited to, court-imposed assessments, fines, and resti-tution.  You also have the responsibility to make use of your funds in a manner consistent with your release plans, your family needs, and for other obligations that you may have.] |

CHAPTER 4
PROHIBITED ACTS AND DISCIPLINARY SEVERITY SCALE

1. [**PROHIBITED ACTS AND DISCIPLINARY SCALE** §541.13

a. **There are four categories of prohibited acts - Greatest, High, Moderate, and Low Moderate (see Table 3 for identification of the prohibited acts within each category).  Specific sanctions are authorized for each category (see Table 4 for a discussion of each sanction). Imposition of a sanction requires that the inmate first is found to have committed prohibited act.]**

Table 3 begins on Page 4, Table 4 on Page 15 of this Chapter.

[(1) **Greatest Category Offenses**.  The Discipline Hearing Officer (DHO) shall impose and execute one or more of sanctions A through E.  Sanction B.1 must be imposed for a VCCLEA inmate rated as violent (i.e., an inmate who, as specified in the Violent Crime Control and Law Enforcement Act of 1994, committed a crime of violence on or after September 13, 1994) and for a PLRA inmate (i.e, an inmate who has been sentenced for an offense committed on or after April 26, 1996).  The DHO may impose and execute sanction F and/or G only in addition to execution of one or more additional sanctions A through G.

(2) **High Category Offenses**.  The Discipline Hearing Officer shall impose and execute one or more of sanctions A through M, and, except as noted in the santion, may also suspend one or more additional sanctions A through M. Sanction B.1 must be imposed for a VCCLEA inmate rated as violent and for a PLRA inmate.  The Unit Discipline Committee shall impose and execute one or more of sanctions G through M, and may also suspend one or more additional sanctions G through M.  Sanction B.1 must be imposed for a VCCLEA inmate rated as violent and for a PLRA inmate. The Unit Discipline Committee shall impose and execute one or more of sanctions G through M, except for a VCCLEA inmate rated as violent.  All high category offense charges for a VCCLEA inmate rated as violent and for a PLRA inmate must be referred to the DHO.

(3) **Moderate Category Offenses**.  The Discipline Hearing Officer shall impose at least one sanction A through N, but, except as noted in the sanction,  may suspend any sanction or sanctions imposed.  Sanction B.1 ordinarily must be imposed for a VCCLEA inmate rated as violent and for a PLRA inmate.  Except for charges referred to the DHO, the Unit Discipline Committee (UDC) shall impose at least one sanction G through N, but may suspend any sanction or sanctions imposed. The UDC ordinarily shall refer to the DHO a moderate category charge for a VCCLEA inmate rated as violent or for a PLRA inmate if the inmate had been found to have committed a moderate category offense during the inmate's current anniversary year. (i.e., the twelve month period of time

for which an inmate may be eligible to earn good conduct time).  The UDC must thoroughly document in writing the reasons why the charge for such an inmate was not referred to the DHO.

    (4)  <u>Low Moderate Category Offenses</u>.  The Discipline Hearing Officer shall impose at least one sanction B.1, or E through P.  The Discipline Hearing Officer may suspend any E through P sanction or sanctions imposed (a B.1 sanction may not be suspended).  Except for charges referred to the DHO, the Unit Discipline Committee shall impose at least one sanction G through P, but may suspend any sanction or sanctions imposed.  The UDC ordinarily shall refer to the DHO a low moderate category charge for a VCCLEA inmate rated as violent or for a PLRA inmate if the inmate had been found to have committed two low moderate category offense during the inmates current anniversary year (i.e, the twelve month period of time for which an inmate may be eligible to earn good conduct time).  The UDC must thoroughly document in writing the reasons why the charge for such an inmate was not referred to the DHO.

    b.  <u>Aiding</u> another person to commit any of these offenses, <u>attempting</u> to commit any of these offenses, <u>and making plans</u> to commit any of these offenses, in all categories of severity, <u>shall be considered the same as a commission of the offense itself</u>.  In these cases, the letter "A" is combined with the offense code.  For example, planning an escape would be considered as Escape and coded 102A.  Likewise, attempting the adulteration of any food or drink would be coded 209A.

    c.  Suspensions of any sanction cannot exceed six months.  Revocation and execution of a suspended sanction require that the inmate first is found to have committed any subsequent prohibited act.  Only the Discipline Hearing Officer (DHO) may execute, suspend, or revoke and execute suspension of sanctions A through F.  The Discipline Hearing Officer (DHO) or Unit Discipline Committee (UDC) may execute, suspend, or revoke and execute suspensions of sanctions G through P.  Revocations and execution of suspensions may be made only at the level (DHO or UDC) which originally imposed the sanction.  The DHO now has that authority for suspensions which were earlier imposed by the Inmate Discipline Committee (IDC).]

    When an inmate receives an Incident Report while on a DHO imposed, but suspended sanction, the new Incident Report is to be forwarded by the UDC to the DHO both for a final disposition on the new Incident Report, and for a disposition on the suspended sanction.  This procedure is not necessary when the UDC informally resolves the new Incident Report.

**[d.   If the Unit Discipline Committee has previously imposed a suspended sanction and subsequently refers a case to the Discipline Hearing Officer, the referral shall include an advisement to the DHO of any intent to revoke that suspension if the DHO finds that the prohibited act was committed.   If the DHO then finds that the prohibited act was committed, the DHO shall so advise the Unit Discipline Committee who may then revoke the previous suspension.**

**e.   The Unit Discipline Committee or Discipline Hearing Officer may impose increased sanctions for repeated, frequent offenses according to the guidelines presented in Table 5.]**

Table 5 is on Page 22 of this Chapter.

**[f. Sanctions by severity of prohibited act, with eligibility for restoration of forfeited and withheld statutory good time are presented in Table 6.]**

Table 6 contains a chart showing the maximum amount of good time that may be forfeited or withheld and the period of time that must pass before an inmate is eligible for restoration of statutory good time. The chart also shows the maximum amount of time that an inmate may spend in disciplinary segregation.   The time frame established in each of these areas is determined by the severity of the prohibited act.

[**TABLE 3 - PROHIBITED ACTS AND DISCIPLINARY SEVERITY SCALE**
**GREATEST CATEGORY**

The UDC shall refer all Greatest Severity Prohibited Acts to the DHO with recommendations as to an appropriate disposition.

| CODE | PROHIBITED ACTS | | SANCTIONS |
|------|-----------------|---|-----------|
| 100 | Killing | A. | Recommend parole date rescission or retardation. |
| 101 | Assaulting any person (includes sexual assault) or an armed assault on the institution's secure perimeter (a charge for assaulting any person at this level is to be used only when serious physical injury has been attempted or carried out by an inmate) | B. | Forfeit earned statutory good time or non-vested good conduct time (up to 100%) and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended). |
| 102 | Escape from escort; escape from a secure institution (low, medium, and high security level and administrative institutions); or escape from a minimum institution <u>with</u> violence | B.1 | Disallow ordinarily between 50 and 75% (27-41 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended). |
| 103 | Setting a fire (charged with this act in this category only when found to pose a threat to life or a threat of serious bodily harm or in furtherance of a prohibited act of Greatest Severity, e.g. in furtherance of a riot or escape; otherwise the charge is properly classified Code 218, or 329) | C. | Disciplinary Transfer (recommend). |
| | | D. | Disciplinary segregation (up to 60 days). |
| | | E. | Make monetary restitution. |
| | | F. | Withhold statutory good time (Note - can be in addition to A through E - cannot be the only sanction executed). |
| | | G. | Loss of privileges (Note - can be in addition to A through E - cannot be the only sanction executed).] |

**[TABLE 3 (Cont'd)
GREATEST CATEGORY (Cont'd)**

| CODE | PROHIBITED ACTS | SANCTIONS |
|------|-----------------|-----------|
| 104 | Possession, manufacture, or introduction of a gun, firearm, weapon, sharpened instrument, knife, dangerous chemical, explosive or any ammunition | Sanctions A-G] |
| 105 | Rioting | |
| 106 | Encouraging others to riot | |
| 107 | Taking hostage(s) | |
| 108 | Possession, manufacture, or introduction of a hazardous tool (Tools most likely to be used in an escape or escape attempt or to serve as weapons capable of doing serious bodily harm to others; or those hazardous to institutional security or personal safety; e.g., hack-saw blade) | |
| 109 | (Not to be used) | |
| 110 | Refusing to provide a urine sample or to take part in other drug-abuse testing | |
| 111 | Introduction of any narcotics, marijuana, drugs, or related paraphernalia not prescribed for the individual by the medical staff | |
| 112 | Use of any narcotics, marijuana, drugs, or related paraphernalia not prescribed for the individual by the medical staff | |
| 113 | Possession of any narcotics, marijuana, drugs, or related paraphernalia not prescribed for the individual by the medical staff | |
| 197 | Use of the telephone to further criminal activity. | |

### [TABLE 3 (Cont'd)
### GREATEST CATEGORY (Cont'd)

| CODE | PROHIBITED ACTS | SANCTIONS |
|------|-----------------|-----------|
| 198 | Interfering with a staff member in the performance of duties. (<u>Conduct must be of the Greatest Severity nature</u>.) This charge is to be used only when another charge of greatest severity is not applicable. | Sanctions A-G] |
| 199 | Conduct which disrupts or interferes with the security or orderly running of the institution or the Bureau of Prisons. (<u>Conduct must be of the Greatest Severity nature</u>.) This charge is to be used only when another charge of greatest severity is not applicable. | |

[TABLE 3 (Cont'd)
HIGH CATEGORY

| CODE | PROHIBITED ACTS | SANCTIONS | |
|------|-----------------|-----------|---|
| 200 | Escape from unescorted Community Programs and activities and Open Institutions (minimum) and from outside secure institutions--<u>without</u> violence. | A. | Recommend parole date rescission or retardation. |
| 201 | Fighting with another person | B. | Forfeit earned statutory good time or non-vested good conduct time up to 50% or up to 60 days, whichever is less, and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended) |
| 202 | (Note to be used) | | |
| 203 | Threatening another with bodily harm or any other offense | | |
| 204 | Extortion, blackmail, protection: Demanding or receiving money or anything of value in return for protection against others, to avoid bodily harm, or under threat of informing | | |
| 205 | Engaging in sexual acts | B.1 | Disallow ordinarily between 25 and 50% (14-27 days) of good conduct time credit available for year (a good conduct time  sanction may not be suspended). |
| 206 | Making sexual proposals or threats to another | | |
| 207 | Wearing a disguise or a mask | C. | Disciplinary Transfer (recommend). |
| 208 | Possession of any unauthorized locking device, or lock pick, or tampering with or blocking any lock device (includes keys), or destroying, altering, interfering with, improperly using, or damaging any security device, mechanism, or procedure | D. | Disciplinary segregation (up to 30 days). |
| | | E. | Make monetary restitution. |
| 209 | Adulteration of any food or drink | F. | Withhold statutory good time] |
| 210 | (Not to be used) | | |
| 211 | Possessing any officer's or staff clothing | | |

[TABLE 3 (Cont'd)
HIGH CATEGORY (Cont'd)

| CODE | PROHIBITED ACTS | | SANCTIONS |
|------|-----------------|---|-----------|
| 212 | Engaging in, or encouraging a group demonstration | G. | Loss of privileges: commissary, movies, recreation, etc. |
| 213 | Encouraging others to refuse to work, or to participate in a work stoppage | H. | Change housing (quarters) |
| 214 | (Not to be used) | I. | Remove from program and/or group activity |
| 215 | Introduction of alcohol into BOP facility | | |
| 216 | Giving or offering an official or staff member a bribe, or anything of value | J. | Loss of job |
| 217 | Giving money to, or receiving money from, any person for purposes of introducing contraband or for any other illegal or prohibited purposes | K. | Impound inmate's personal property |
| | | L. | Confiscate contraband |
| 218 | Destroying, altering, or damaging government property, or the property of another person, having a value in excess of $100.00 or destroying, altering, damaging life-safety devices (e.g., fire alarm) regardless of financial value | M. | Restrict to quarters] |
| 219 | Stealing (theft; this includes data obtained through the unauthorized use of a communications facility, or through the unauthorized access to disks, tapes, or computer printouts or other automated equipment on which data is stored.) | | |

[**TABLE 3 (Cont'd)**
**HIGH CATEGORY (Cont'd)**

| CODE | PROHIBITED ACTS | SANCTIONS |
|------|-----------------|-----------|
| 220 | Demonstrating, practicing, or using martial arts, boxing (except for use of a punching bag), wrestling, or other forms of physical encounter, or military exercises or drill (except for drill authorized and conducted by staff) | Sanctions A-M] |
| 221 | Being in an unauthorized area with a person of the opposite sex without staff permission | |
| 222 | Making, possessing, or using intoxicants | |
| 223 | Refusing to breathe into a breathalyser or take part in other testing for use of alcohol | |
| 224 | Assaulting any person (charged with this act only when less serious physical injury or contact has been attempted or carried out by an inmate) | |
| 297 | Use of the telephone for abuses other than criminal activity (e.g., circumventing telephone monitoring procedures, possession and/or use of another inmate's PIN number; third-party calling; third-party billing; using credit card numbers to place telephone calls; conference calling; talking in code). | |
| 298 | Interfering with a staff member in the performance of duties.  (Conduct must be of the High Severity nature.)  This charge is to be used only when another charge of the high severity is not applicable. | |
| 299 | Conduct which disrupts or interferes with the security or orderly running of the institution or the Bureau of Prisons. (Conduct must be of the High Severity nature.)  This charge is to be used only when another charge of high severity is not applicable. | |

[TABLE 3 (Cont'd)
MODERATE CATEGORY

| CODE | PROHIBITED ACTS | SANCTIONS | |
|---|---|---|---|
| 300 | Indecent Exposure | A. | Recommend parole date rescission or retardation. |
| 301 | (Not to be used) | | |
| 302 | Misuse of authorized medication | B. | Forfeit earned statutory good time or non-vested good conduct time up to 25% or up to 30 days, whichever is less, and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended). |
| 303 | Possession of money or currency, unless specifically authorized, or in excess of the amount authorized | | |
| 304 | Loaning of property or anything of valve for profit or increased return | | |
| 305 | Possession of anything not authorized for retention or receipt by the inmate, and not issued to him through regular channels | B.1 | Disallow ordinarily up to 25% (1-14 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended). |
| 306 | Refusing to work, or to accept a program assignment | | |
| 307 | Refusing to obey an order of any staff member (May be categorized and charged in terms of greater severity, according to the nature of the order being disobeyed; e.g., failure to obey an order which furthers a riot would be charged as 105, Rioting; refusing to obey an order which furthers a fight would be charged as 201, Fighting; refusing to provide a urine sample when ordered would be charged as Code 110) | C. | Disciplinary Transfer (recommend). |
| | | D. | Disciplinary segregation (up to 15 days). |
| | | E. | Make monetary restitution. |
| | | F. | Withhold statutory good time.] |
| 308 | Violating a condition of a furlough | | |
| 309 | Violating a condition of a community program | | |
| 310 | Unexcused absence from work or any assignment | | |
| 311 | Failing to perform work as instructed by the supervisor | | |
| 312 | Insolence towards a staff member | | |

[**TABLE 3 (Cont'd)**
**MODERATE CATEGORY (Cont'd)**

| CODE | PROHIBITED ACTS | | SANCTIONS |
|------|-----------------|---|-----------|
| 313 | Lying or providing a false statement to a staff member. | G. | Loss of privileges: commissary, movies, recreation, etc. |
| 314 | Counterfeiting, forging or unauthorized reproduction of any document, article of identification, money, security, or official paper. (May be categorized in terms of greater severity according to the nature of the item being reproduced; e.g., counterfeiting release papers to effect escape, Code 102 or Code 200) | H. | Change housing (quarters). |
| | | I. | Remove from program and/or group activity. |
| 315 | Participating in an unauthorized meeting or gathering | J. | Loss of job. |
| | | K. | Impound inmate's personal property. |
| 316 | Being in an unauthorized area | L. | Confiscate contraband. |
| 317 | Failure to follow safety or sanitation regulations | M. | Restrict to quarters. |
| | | N. | Extra duty.] |
| 318 | Using any equipment or machinery which is not specifically authorized | | |
| 319 | Using any equipment or machinery contrary to instructions or posted safety standards | | |
| 320 | Failing to stand count | | |
| 321 | Interfering with the taking of count | | |
| 322 | (Not to be used) | | |
| 323 | (Not to be used) | | |
| 324 | Gambling | | |
| 325 | Preparing or conducting a gambling pool | | |
| 326 | Possession of gambling paraphernalia | | |
| 327 | Unauthorized contacts with the public | | |
| 328 | Giving money or anything of value to, or accepting money or anything of value from: another inmate, or any other person without staff authorization | | |

[TABLE 3 (Cont'd)
MODERATE CATEGORY (Cont'd)

| CODE | PROHIBITED ACTS | SANCTIONS |
|------|-----------------|-----------|
| 329 | Destroying, altering or damaging government property, or the property of another person, having a value of $100.00 or less | Sanctions A-N] |
| 330 | Being unsanitary or untidy; failing to keep one's person and one's quarters in accordance with posted standards | |
| 331 | Possession, manufacture, or introduction of a non-hazardous tool or other non-hazardous contraband (Tool not likely to be used in an escape or escape attempt, or to serve as a weapon capable of doing serious bodily harm to others, or not hazardous to institutional security or personal safety; Other non-hazardous contraband includes such items as food or cosmetics) | |
| 332 | Smoking where prohibited | |
| 397 | Use of the telephone for abuses other than criminal activity (e.g., conference calling, possession and/or use of another inmate's PIN number, three-way calling, providing false information for preparation of a telephone list). | |
| 398 | Interfering with a staff member in the performance of duties.  (Conduct must be of the Moderate Severity nature.)  This charge is to be used only when another charge of moderate severity is not applicable. | |
| 399 | Conduct which disrupts or interferes with the security or orderly running of the institution or the Bureau of Prisons.  (Conduct must be of the Moderate Severity nature).  This charge is to be used only when another charge of moderate severity is not applicable. | |

## [TABLE 3 (Cont'd)
## LOW MODERATE CATEGORY

| CODE | PROHIBITED ACTS | SANCTIONS |
|------|-----------------|-----------|

**400** Possession of property belonging to another person

**401** Possessing unauthorized amount of otherwise authorized clothing

**402** Malingering, feigning illness

**403** Not to be used

**404** Using abusive or obscene language

**405** Tattooing or self-mutilation

**\* 406** Not to be Used                                        **\***

**407** Conduct with a visitor in violation of Bureau regulations (Restriction, or loss for a specific period of time, of these privileges may often be an appropriate sanction G)

**408** Conducting a business

**409** Unauthorized physical contact (e.g., kissing, embracing)

**\* 410** Unauthorized use of mail  (Restriction, or loss for a specific period of time, of these privileges may often be an appropriate sanction G) (May be categorized and charged in terms of greater severity, according to the nature of the unauthorized use; e.g., the mail is used for planning, facilitating, committing an armed assault on the institution's secure perimeter, would be charged as Code 101, Assault)

**B.1** Disallow ordinarily up to 12.5% (1-7 days) of good conduct time credit available for year (to be used only where inmate found to have committed a second violation of the same prohibited act within 6 months); Disallow ordinarily up to 25% (1-14 days) of good conduct time credit available for year (to be used only where inmate found to have committed a third violation of the same prohibited act within 6 months) (a good conduct time sanction may not be suspended).]
(See Chapter 4 Page 16 for VCCLEA violent and PLRA inmates.)

**[E.** Make monetary restitution.

**F.** Withhold statutory good time.

**G.** Loss of privileges: commissary, movies, recreation, etc.

**H.** Change housing (quarters).

**I.** Remove from program and/or group activity.]

[**TABLE 3   (Cont'd)**
**LOW MODERATE CATEGORY (Cont'd)**

| CODE | PROHIBITED ACTS | | SANCTIONS |
|------|-----------------|------|-----------|
| | | J. | Loss of job. |
| 497 | Use of the telephone for abuses other than criminal activity (e.g., exceeding the 15-minute time limit for telephone calls; using the telephone in an unauthorized area; placing of an unauthorized individual on the telephone list).                              * | K. | Impound inmate's personal property. |
| | | L. | Confiscate contraband. |
| | | M. | Restrict to quarters. |
| 498 | Interfering with a staff member in the performance of duties. <u>Conduct must be of the Low Moderate Severity nature</u>.)  This charge is to be used only when another charge of low moderate severity is not applicable. | N. | Extra duty. |
| | | O. | Reprimand. |
| | | P. | Warning. |
| 499 | Conduct which disrupts or interferes with the security or orderly running of the institution or the Bureau of Prisons. <u>(Conduct must be of the Low Moderate severity nature</u>.)  This charge is to be used only when another charge of low moderate severity is not applicable. | | |

<u>NOTE</u>:  <u>Aiding</u> another person to commit any of these offenses, <u>attempting</u> to commit any of these offenses, <u>and making plans</u> to commit any of these offenses, in all categories of severity, shall be considered the same as a commission of the offenses itself.]

When the prohibited act is interfering with a staff member in the performance of duties (Code 198, 298, 398, or 498) or Conduct Which Disrupts (Code 199, 299, 399, or 499), the DHO or UDC, in its findings, should indicate a specific finding of the severity level of the conduct, and a comparison to an offense (or offenses) in that severity level which the DHO or UDC finds is most comparable.

**Example:** "We find the act of _____ to be of High severity, most comparable to prohibited act Engaging in a Group Demonstration."

Sanction B.1 may be imposed on the Low Moderate category **only** where the inmate has committed the same low moderate prohibited act more than one time within a six-month period except for a VCCLEA inmate rated as violent or a PLRA inmate (See Chapter 4, Page 16).

**[TABLE 4 - SANCTIONS**

**1.   Sanctions of the Discipline Hearing Officer**:  (upon finding the inmate committed the prohibited act)

   **A.   Recommend Parole Date Rescission or Retardation**.  The DHO may make recommendations to the U.S. Parole Commission for retardation or rescission of parole grants.  This may require holding fact-findings hearings upon request of or for the use of the Commission.

   **B.   Forfeit Earned Statutory Good Time, Non-vested Good Conduct Time, and/or Terminate or Disallow Extra Good Time**.  The statutory good time available for forfeiture is limited to an amount computed by multiplying the number of months served at the time of the offense for which forfeiture action is taken, by the applicable monthly rate specified in 18 U.S.C. § 4161 (less any previous forfeiture or withholding outstanding).  The amount of good conduct time (GCT) available for forfeiture is limited to the total number of days in the "non-vested" status at the time of the misconduct (less any previous forfeiture).  A forfeiture of good conduct time sanction may not be suspended.  Disallowance of extra good time is limited to the extra good time for the calendar month in which the violation occurs.  It may not be withheld or restored.  The sanction of termination or disallowance of extra good time may not be suspended.  Forfeited good conduct time will not be restored.  Authority to restore forfeited statutory good time is delegated to the Warden.  This decision may not be delegated lower than the Associate Warden level.  Limitations on this sanction and eligibility for restoration are based on the severity scale.  (See Table 6)]

See Page 19 of this Chapter for limitations on this sanction and for eligibility for restoration.  Good time (statutory and good conduct time) percentages may be combined when separate acts or offenses occur on the same day and are heard by the DHO at the same time.  For example, when an inmate is charged, and found to have committed, both a 200 and 300 Code violation by the same sitting DHO, that DHO may forfeit 75% of the inmate's good time (50% for the 200 code violation, 25% for the 300 Code violation).  Good time may not be forfeited (because it is not earned) for an inmate solely in service of a civil contempt.  See the Sentence Computation Manual (Old Law, Pre-CCCA-1984) for a discussion of termination or disallowance of extra good time.

An application for restoration of good time is to go from the inmate's unit team, through both the DHO and Captain for comments, to the Warden or his or her delegated representative for final decision.

This sanction B does not apply to inmates committed under the provisions of the Comprehensive Crime Control Act for crimes

## [TABLE 4 - SANCTIONS (Cont'd)

committed on or after November 1, 1987 and prior to passage of the Violent Crime Control and Law Enforcement Act of 1994 (September 23, 1994). For those inmates, the applicable sanction is B.1.

**[B.1  Disallowance of Good Conduct Time.  An inmate sentenced under the Sentencing Reform Act provisions of the Comprehensive Crime Control Act (includes the inmate who committed his or her crime on or after November 1, 1987) may not receive statutory good time, but is eligible to receive 54 days good conduct time credit each year (18 U.S.C. § 3624(b)).  Once awarded, the credit is vested, and may not be disallowed.  However for crimes committed on or after September 13, 1994 and prior to April 26, 1996, credit toward an inmate's service of sentence shall not be vested unless the inmate has earned or is making satisfactory progress toward a high school diploma or an equivalent degree, or has been exempted from participation because of a learning disability.  For crimes committed on or after April 26, 1996, credit toward an inmate's service of sentence shall vest on the date the inmate is released from custody.  Once disallowed, the credit may not be restored, except by immediate review or appeal action as indicated below.  Prior to this award being made, the credit may be disallowed for an inmate found to have committed a prohibited act.  A sanction of disallowance of good conduct time may not be suspended.  Only the DHO can take action to disallow good conduct time.  The DHO shall consider the severity of the prohibited act and the suggested disallowance guidelines in making a determination to disallow good conduct time.  A decision to go above the guideline range is warranted for a greatly aggravated offense or where there is a repetitive violation of the same prohibited act that occurs within a relatively short time frame (e.g., within 18 months for the same greatest severity prohibited act, within 12 months for the same high severity prohibited act, and within 6 months for the same moderate severity prohibited act).  A decision to go below the guidelines is warranted for strong mitigating factors. Any decision outside the suggested disallowance guidelines is to be documented and justified in the DHO report.**

**VCCLEA inmates rated as violent and PLRA inmates will ordinarily be disallowed good conduct time for each prohibited act they are found to have committed at a DHO hearing, consistent with the following;**

**(1)  Greatest Category Offenses.  A minimum of 40 days (or, if less than 54 days are available for the prorated period, a minimum of 75% of available good time conduct) for each act committed;**

**(2)  High Category Offenses.  A minimum of 27 days (or, if less than 54 days are available for the prorated period, a**

<u>[TABLE 4 - SANCTIONS (Cont'd)</u>

minimum of 50% of available good conduct time) for each act committed.

(3) <u>Moderate Category Offenses</u>.  A minimum of 13 days (or, if less than 54 days are available for the prorated period, a minimum of 25% of available good conduct time) for each act committed if the inmate has committed two or more moderate category offenses during the current anniversary period.

(4) <u>Low Moderate Category Offenses</u>.  A minimum of 6 days (or, if less than 54 days are available for the prorated period, a minimum of 12.5% of available good conduct time) for each act committed if the inmate has committed three or more low moderate category offenses during the current anniversary period.

However, the DHO may, after careful consideration of mitigating factors (seriousness of the offense, the inmate's past disciplinary record, the lack of available good conduct time, etc.) choose to impose a lesser sanction, or even disallow no GCT for moderate and low moderate prohibited acts by VCCLEA inmates rated as violent or by PLRA inmates.  The DHO must thoroughly detail the rationale for choosing to disallow less than 13 days or 6 days respectively.  This will be documented in Section VII of the DHO report.  Disallowance of amounts greater than 13 days or 6 days respectively will occur with repetitive offenses consistent with the guidelines in this B.1.

The decision of the DHO is final and is subject only to review by the Warden to ensure conformity with the provisions of the disciplinary policy and by inmate appeal through the administrative remedy program.  The DHO is to ensure that the inmate is notified that any appeal of a disallowance of good conduct time must be made within the time frames established in the Bureau's rule on administrative remedy procedures.

Except for VCCLEA inmates rated as violent or PLRA inmates, Sanction B.1 may be imposed on the Low Moderate category <u>only</u> where the inmate has committed the same low moderate prohibited act more than one time within a six-month period.]

Good conduct time credit may only be given to an inmate serving a sentence of more than one year, but less than the duration of his life.  In the last year or portion of a year of an inmate's sentence, only the amount of good conduct time credit available for that remaining period of time may be disallowed.  The Appendix to this Chapter 4 discusses procedures for the disallowance of good conduct time.

### [TABLE 4 (Cont'd)

**[C.  Recommend Disciplinary Transfer.  The DHO may recommend that an inmate be transferred to another institution for disciplinary reasons.**

**Where a present or impending emergency requires immediate action, the Warden may recommend for approval of the Regional Director the transfer of an inmate prior to either a UDC OR DHO hearing.  Transfers for disciplinary reasons prior to a hearing before the UDC or DHO may be used in emergency situations and only with approval of the Regional Director.  When an inmate is transferred under these circumstances, the sending institution shall forward copies of incident reports and other relevant materials with completed investigation to the receiving institution's Discipline Hearing Officer.  The inmate shall receive a hearing at the receiving institution as soon as practicable under the circumstances to consider the factual basis of the charge of misconduct and the reasons for the emergency transfer.  All procedural requirements applicable to UDC or DHO hearings contained in this rule are appropriate, except that written statements of unavailable witnesses are liberally accepted instead of live testimony.]**

Transfers from one region to another require the approval of both the sending and receiving Regional Directors.

The receiving institution does not need to hold a new UDC hearing if such a hearing was held by the sending institution prior to the inmate's transfer.

**[D.  Disciplinary Segregation.  The DHO may direct that an inmate be placed or retained in disciplinary segregation pursuant to guidelines contained in this rule.  Consecutive disciplinary segregation sanctions can be imposed and executed for inmates charged with and found to have committed offenses that are part of different acts only. Specific limits on time in disciplinary segregation are based on the severity scale.  (See Table 6)]**

Separate sanctions may be imposed for separate acts or offenses. Acts are different or separate if they have different elements to the offenses.  For example, if an inmate is involved in a fight with another inmate, and in the course of subduing that incident the inmate also strikes a staff member, the inmate can be charged with fighting (Code 201) and also assaulting a staff member (Code 101).  The inmate can be separately charged and punished, on the basis of one Incident Report, or in two separate Incident Reports, for each offense.  The inmate could not be punished for both assault on and fighting with the inmate, since the elements of both offenses (the time, place, persons involved, actions performed) are essentially the same for both offenses.  If, on the way to administrative detention, the inmate starts another disturbance, and strikes another officer, the

### [TABLE 4 (Cont'd)]

inmate could be charged with that as another assault offense. Similarly, an inmate serving a period of time in disciplinary segregation may commit a prohibited act there, and receive additional, consecutive time in segregation for that new offense.

See Table 6 for the specific limits on sanctions. Each different or separate offense should be written on a separate Incident Report. Unless otherwise specified by the DHO, disciplinary segregation placement for different or separate prohibited acts are to be imposed consecutively.

An inmate who has been recommended for a Control Unit placement may be transferred prior to completing the required segregation period. The remainder of any segregation period shall be served at the receiving institution.

Except as noted above, an inmate serving a sanction of disciplinary segregation ordinarily is not to be transferred from the institution imposing the sanction until completion of the segregation period. When this is not practical, the Regional Office must approve the transfer. The inmate shall complete the remainder of any segregation period at the receiving institution.

**[E. Make Monetary Restitution. The DHO may direct that an inmate reimburse the U.S. Treasury for any damages to U.S. Government property that the individual is determined to have caused or contributed to.]**

An inmate's commissary privileges may be suspended or limited until restitution is made. See the Accounting Management Manual for instructions regarding impoundment of inmate funds.

**[F. Withholding Statutory Good Time. The DHO may direct that an inmate's good time be withheld. Withholding of good time should not be applied as a universal punishment to all persons in disciplinary segregation status. Withholding is limited to the total amount of good time creditable for the single month during which the violation occurs.**

**Some offenses, such as refusal to work at an assignment, may be recurring, thereby permitting, when ordered by the DHO, consecutive withholding actions. When this is the intent, the DHO shall specify at the time of the initial DHO hearing that good time may be withheld until the inmate elects to return to work. During the running of such a withholding order, the DHO shall review the offense with the inmate on a monthly basis. For an on-going offense, staff need not prepare a new Incident Report or conduct an investigation or initial hearing (UDC). The DHO shall provide the inmate an opportunity to appear in person and**

### [TABLE 4 (Cont'd)]

**to present a statement orally or in writing.  The DHO shall document its action on, or by an attachment to, the initial Institution Discipline report.  If further withholding is ordered, the DHO shall advise the inmate of the inmate's right to appeal through the Administrative Remedy procedures (Part 542).**

**Only the Warden may restore withheld statutory good time.  This decision may not be delegated lower than the Associate Warden level.  Restoration eligibility is based on the severity scale.  (See Table 6)]**

An application for restoration of good time must be forwarded from the inmate's unit team, through both the DHO and Captain for comments, to the Warden or his or her delegated representative for final decision.

Part 542 refers to Program Statement on Administrative Remedy Procedure for Inmates.  See Page 20 of this Chapter for information on restoration eligibility.

This sanction F does not apply to inmates committed under the provisions of the Comprehensive Crime Control Act.  This means that inmates who committed their crimes on or after November 1, 1987, and who are sentenced under the Sentencing Reform Act provisions of the Comprehensive Crime Control Act are only eligible to receive 54 days good conduct time credit (18 U.S.C. § 3624(b)).  This credit is given at the end of each year of time served and, once given, is vested.  For these inmates, the DHO's authority is final and is subject only to review by the Warden to ensure conformity with the provisions of the discipline policy and by inmate appeal through the Administrative Remedy procedures.

**[2.  Sanctions of the Discipline Hearing Officer/Unit Discipline Committee: (upon finding the inmate committed the prohibited act)**

**G.  Loss of Privileges:]**  Commissary, Movies, Recreation, etc.  **[The DHO or UDC may direct that an inmate forego specific privileges for a specified period of time.  Ordinarily, loss of privileges is used as a sanction in response to an abuse of that privilege.  However, the DHO or UDC may impose a loss of privilege sanction not directly related to the offense when there is a lack of other appropriate sanctions or when imposition of an appropriate sanction previously has been ineffective.]**

After careful consideration of all relevant facts, the UDC or DHO may impose a loss of privilege sanction not directly related to the offense, provided there is a belief that the imposed sanction (e.g., loss of visiting privileges) is viewed as having a significant impact on the inmate's future behavior.

Loss of recreation privileges cannot be imposed on inmates in Special Housing, but may be used as a sanction for general population inmates.

[H.  <u>Change Housing (Quarters)</u>.  **The DHO or UDC may direct that an inmate be removed from current housing and placed in other housing.**

I.  <u>Remove from Program and/or Group Activity</u>.  **The DHO or UDC may direct that an inmate forego participating in any program or group activity for a specified period of time.**

J.  <u>Loss of Job</u>.  **The DHO or UDC may direct that an inmate be removed from present job and/or be assigned to another job.**

K.  <u>Impound Inmate's Personal Property</u>.  **The DHO or UDC may direct that an inmate's personal property be stored in the institution (when relevant to offense) for a specified period of time.**

L.  <u>Confiscate Contraband</u>.  **The DHO or UDC may direct that any contraband in the possession of an inmate be confiscated and disposed of appropriately.]**

For procedures, see the Program Statement on Personal Property of Inmates.

[M.  <u>Restrict Quarters</u>.  **The DHO or UDC may direct that an inmate be confined to quarters or in its immediate area for a specified period of time.**

N.  <u>Extra Duty</u>.  **The DHO or UDC may direct that an inmate perform tasks other than those performed during regularly assigned institutional job.**

O.  <u>Reprimand</u>.  **The DHO or UDC may reprimand an inmate either verbally or in writing.**

P.  <u>Warning</u>.  **The DHO or UDC may verbally warn an inmate regarding committing prohibited act(s).]**

<u>Note</u>:  Although not considered sanctions, the UDC or DHO may recommend classification or program changes.  For example, the DHO may recommend an inmate's participation in, or removal from, a particular program.  When this occurs, a final decision will ordinarily be made in accordance with the established procedures for deciding that issue. In the example cited above, a referral would be made to the inmate's unit team for a decision on the recommendation.

[**TABLE 5**

## SANCTIONS FOR REPETITION OF PROHIBITED ACTS WITHIN SAME CATEGORY

**When the Unit Discipline Committee or DHO finds that an inmate has committed a prohibited act in the Low Moderate, Moderate, or High category, and when there has been a repetition of the same offense(s) within recent months (offenses for violation of the same code), increased sanctions are authorized to be imposed by the DHO according to the following chart.  (Note: An informal resolution may not be considered as a prior offense for purposes of this chart.)**

| Category | Prior Offense (Same Code) Within Time Period | Frequency of Repeated Offense | Sanction Permitted |
|---|---|---|---|
| Low Moderate (400 Series) | 6 months | 2d offense | Low Moderate Sanctions plus<br>1.  Disciplinary segregation, up to 7 days.<br><br>2.  Forfeit earned SGT or non-vested GCT up to 10% or up to 15 days, whichever is less, and/or terminate or disallow extra good time (EGT) (an EGT sanction may not be suspended). |
| | | 3d offense, or more | Any sanctions available in Moderate (300) and Low Moderate (400) series. |
| Moderate (300 Series) | 12 months | 2d offense | Moderate Sanctions (A,C,E-N) plus<br><br>1.  Disciplinary segregation, up to 21 days |

### [TABLE 5 (Cont'd)

| Category | Prior Offense (Same Code) Within Time Period | Frequency of Repeated Offense | Sanction Permitted |
|---|---|---|---|
| | | | 2.   Forfeit earned SGT or non-vested GCT up to 37 1/2% or up to 45 days, whichever is less, and/or terminate or disallow EGT (an EGT sanction may not be suspended). |
| | or more | 3d offense, available | Any sanctions in Moderate (300) and High (200) series. |
| High (200 Series) | 18 months | 2d offense | High Sanction (A,C,E-M), plus |
| | | | 1.   Disciplinary segregation,    up to 45 days. |
| | | | 2.   Forfeit earned SGT or non-vested GCT up to 75% or up to 90 days, whichever is less, and/or terminate or disallow EGT (an EGT sanction may not be suspended). |
| | | 3d offense | Any sanction available in High or more (200) and Greatest (100) series.] |

PS 5270.07
CN-08 Issued 9/29/97 Effective 11/3/97
Chapter 4, Page 24

[TABLE 6

## SANCTIONS BY SEVERITY OF PROHIBITED ACT, WITH ELIGIBILITY FOR RESTORATION OF FORFEITED AND WITHHELD STATUTORY GOOD TIME

| Severity of Act Seq1 | Sanctions | Max.Amt. Forf. GT1 | Max.Amt. W/hd SGT | Elig. Restoration Forf.SGT | Elig. Restoration W/hd/SGT | Max. Dis |
|---|---|---|---|---|---|---|
| Greatest | A-F | 100% days | Good time creditable for single month during which violation occurs. Applies to all categories. | 24 mos | 18 mos | 60 |
| High | A-M | 50% or days 60 days, whichever is less | | 18 mos | 12 mos | 30 |
| Moderate | A-N | 25% or days 30 days, whichever is less | | 12 mos | 6 mos | 15 |
| Low/Moderate offense) days offense) days offense)] | E-P | N/A | | N/A(1st offense) 6 mos.(2nd or 3rd offense in same category within six months) | 3 mos | N/A (1st 7 (2nd 15 (3rd * |

1 See Table 5, SANCTIONS FOR REPETITION OF PROHIBITED ACTS WITHIN SAME CATEGORY, on Page 22 of this Chapter.  Forfeited good conduct time will not be restored ("GT" in Table 6 represents

both good conduct and statutory good time.)

[<u>NOTE</u>:  In Table 6 headings, "GT" represents both good conduct
and statutory good time and "SGT" represents statutory good time.
Forfeited good conduct time is not eligible for restoration.
Restoration of statutory good time will be approved at the time
of initial eligibility only when the inmate has shown a period of
time with improved good behavior.  When the Warden or his
delegated representative denies restoration of forfeited or
withheld statutory good time, the unit team shall notify the
inmate of the reasons for denial.  The unit team shall establish
a new eligibility date, not to exceed six months from the date of
denial.]

**[TABLE 6 (Cont'd)]**

To ensure an inmate's case is not overlooked when statutory good time has been forfeited or withheld, the unit team must review the eligibility requirements for restoration in accordance with the time frames established by the Program Statement on Classification and Program Review of Inmates.  A recommendation of the unit team, whether for or against restoration, must be forwarded (on BP-389/Record Form 84) to the Warden, through the DHO and Captain for disposition.  Except as noted below, eligibility for restoration of withheld or forfeited statutory good time is computed from the date of the withholding or forfeiture action by the DHO.  An inmate who has escaped and receives a forfeiture at a subsequent in absentia hearing begins the eligibility for restoration period upon return to custody of the Bureau of Prisons.  The Warden will refer for approval of the Regional Director a case where the Warden determines exceptional circumstances support restoration of statutory good time prior to completion of the eligibility requirements.

**[An inmate with an approaching parole effective date, or an approaching mandatory release or expiration date who has forfeited good time may be placed in a Community Treatment Center only if that inmate is otherwise eligible under Bureau policy, and if there exists a legitimate documented need for such placement.  The length of stay at the Community Treatment Center is to be held to the time necessary to establish residence and employment.]**

<u>DISALLOWANCE OF GOOD CONDUCT TIME</u>

Sanctions B and F of the Prohibited Acts and Disciplinary Severity Scale, pertain to statutory good time and do not apply to inmates committed under the Sentencing Reform Act provisions of the Comprehensive Crime Control Act.  This means that inmates who committed their crimes on or after November 1, 1987 and who are sentenced under the Sentencing Reform Act provisions of the Comprehensive Crime Control Act are only eligible to receive 54 days per year of good conduct time credit (18 U.S.C. §3624(b)). This credit is given at the end of each year of time served and, once given, is vested.  Also, once disallowed it may not be restored (except for procedural error, corrected on immediate administrative review, or by appeal through the Administrative Remedy procedures). Disallowance of good conduct time is to be accomplished in accordance with the following procedures.

A. Only the DHO can take action to disallow good conduct time. A UDC may recommend a disallowance to the DHO, but a UDC may not independently disallow good conduct time.

B. In determining the amount of good conduct time to be disallowed, the DHO should assess the seriousness of the particular prohibited act.  Code violations of the greatest severity ordinarily should have the greatest amount of lost good conduct time credit.  However, even within the same severity level, the DHO is to assess the severity of the offense and impose lost good conduct time credit based on an assessment of the particular violation.  Consideration of the inmate's VCCLEA 1994 Offense Category should be taken into consideration when imposing sanctions. Those with a "VIOLENT" category offense should receive greater disallowance sanctions. See Table 4 Section B.1 for specific minimum disallowance guidelines.

(1)  Except as indicated in paragraph (2) below, the DHO should effect the loss of good conduct time pursuant to the following table.

| 100 Code | (Greatest Category) | Disallow ordinarily between 50 and 75% of good conduct time credit (27-41 days) available for year. |
|---|---|---|
| 200 Code | (High Category) | Disallow ordinarily between 25 and 50% of good conduct time credit (14-27 days) available for year. |
| 300 Code | (Moderate Category) | Disallow ordinarily up to 25% of good conduct time credit (1-14 days) available for year. |

PS 5270.07
CN-08 Issued 9/29/97 Effective 11/3/97
Chapter 4, Appendix, Page 2

400 Code (Low Moderate Category) May disallow only for repetitive acts.  For a second violation of the same prohibited act committed within 6 months, the DHO may disallow ordinarily up to 12.5% of the good conduct time credit (1-7 days) available for year; for a third violation of the same prohibited act committed within 6 months, the DHO may disallow ordinarily up to 25% of the good conduct time credit (1-14 days) available for year.

    (2)   The DHO may impose a sanction greater than or less than the guidelines indicated in paragraph (1) of this section when the available information clearly indicates such action is warranted. The DHO is to indicate in the record of the hearing the specific reasons for varying from the established guidelines. Going above the guidelines is warranted for a greatly aggravated offense or for repeated violations of the same prohibited act that occurs within a relatively short time frame (e.g., within an 18-month period for the same greatest severity prohibited act, within a 12-month period for the same high severity prohibited act, and within a six-month period for the same moderate severity prohibited act).  Going below the guidelines is also warranted for strong mitigating factors.

    C.  The decision of the DHO is final, and is subject only to procedural review by the Warden and by appeal through the Administrative Remedy procedures.  The DHO is to ensure that the inmate is notified of the information contained in this paragraph C.

    D.  The DHO is to provide the Inmate Systems Manager (ISM) with documentation of each good conduct time disallowance  (BP-448, Good Conduct time Action Notice).

    (1)   At the end of each year of an inmate's confinement, and within the 15-day window provided by the statute for a determination of an award of good conduct time, the ISM is to determine the number of days disallowed by the DHO and, when necessary, is to recalculate the inmate's sentence.  This recalculation is based on the total amount of time disallowed, as reported by DHO actions on offenses (prohibited acts) occurring during the year.  The calculation should be made on DHO actions near the end of the year, even if they are under administrative review or appeal.  The records will be corrected (disallowance

reduced, for example) if ordered by the reviewing official. Until any such order, the action of the DHO is final and may be implemented in the inmate's sentence computation and all official records.

(2)  CCMs will perform the above computation for inmates in contract facilities.

(3)  Prior to making an award ISM staff should determine if there are unresolved (pending) incident reports that might result in a disallowance of GCT. If a pending report exists, the award decision should be deferred until resolution of that report.

(4)  If subsequent to an award, staff become aware of misconduct that occurred during the evaluation period, the awarded GCT will be available for disallowance following a finding by a DHO that a prohibited act occurred.  However, GCT cannot be disallowed for misconduct that occurred after the evaluation period.

E.  Questions concerning the disallowance of good conduct time credits are to be directed to the Regional Inmate Systems Administrator or to the Regional Counsel.

CHAPTER 5
INCIDENT REPORT

1.  [**INCIDENT REPORT AND INVESTIGATION §541.14**

\*     **a.  Incident Report.  The Bureau of Prisons encourages informal resolution (requiring consent of both parties) of incidents involving violations of Bureau regulations.  However, when staff witnesses or has a reasonable belief that a violation of Bureau regulations has been committed by an inmate, and when staff considers informal resolution of the incident inappropriate or unsuccessful, staff shall prepare an Incident Report and promptly forward it to the appropriate Lieutenant.  Except for prohibited acts in the Greatest or High Severity Categories, the Lieutenant may informally dispose of the Incident Report or forward the Incident Report for investigation consistent with this section. The Lieutenant shall expunge the inmate's file of the Incident Report if informal resolution is accomplished.  Only the DHO may make a final disposition on a prohibited act in the Greatest Severity Category or on a prohibited act in the High Category (when the High Category prohibited act has been committed by a VCCLEA inmate rated as violent or by a PLRA inmate.]**                           \*

   Prohibited acts in the 100 code (greatest severity) and in the 200 code (high severity) may not be informally resolved by the writer of the report, and a Incident Report must be prepared. Prohibited acts in the 100 code and in the 200 code may not be informally resolved by a Lieutenant, and must be
\*    referred to the UDC.  Prohibited acts in the 100 code and 200 code may not be informally resolved or the charges dropped by the UDC.  The UDC may dispose of a 200 code violation except for VCCLEA inmates rated as violent or PLRA inmates.  For those inmates, all 200 level charges will be referred to the DHO for disposition.                                                       \*

   A record of any informal resolution in the 300 or 400 codes (whether between the inmate and the writer of the report, the inmate and the Lieutenant, or the inmate and the UDC) is to be maintained by the Captain.  The record is to reflect the inmate's name, register number, subject of the informal resolution, and the agreed upon disposition.  This procedure should enable the Captain, and others as necessary, to monitor the informal resolution process.  Staff may suspend disciplinary proceedings for a period not to exceed two calendar weeks while informal resolution is undertaken and accomplished.  If informal resolution is unsuccessful, staff may reinstate disciplinary proceedings at the same stage at which they were suspended.  The time requirements then begin running again, at the same point at which they were suspended.

   The reporting employee should complete immediately Part 1 of the Incident Report.  The incident is to be one of the prohibited

acts listed in Chapter 4 of this Program Statement.  The entire

language of the prohibited act(s) does not have to be copied. Only the relevant portion need be used.  For example, "destroying government property, code no. 218" "possessing narcotics, code no. 109" would be acceptable listings for appropriate charges.

 The description of the incident should contain the details of the activity which is being reported.  All facts about the incident which are known by the employee and which are not confidential should be recorded.  If there is anything unusual about the inmate's behavior, this would be noted.  The reporting employee should also list those persons (staff, inmate, others) present at the scene, and the disposition of any physical evidenced (weapons, property, etc.) which the employee may have personally handled.  The report is also to reflect any immediate action taken, including the use of force.  The reporting employee shall sign the report and indicate his or her title in the appropriate blocks.  The date and time of the report being signed should be entered.  The Incident Report should then be forwarded to the appropriate Lieutenant for disposition.

**[b.  <u>Investigation</u>.  Staff shall conduct the investigation promptly unless circumstances beyond the control of the investigator intervene.]**

 The investigating officer is ordinarily appointed within 24 hours of the time the violation is reported.  It is suggested that the investigation be initiated and ordinarily completed within 24 hrs. of this appointment.

 **[(1) When it appears likely that the incident may be the subject of criminal prosecution, the investigating officer shall suspend the investigation, and staff may not question the inmate until the Federal Bureau of Investigation or other investigative agency interviews have been completed or until the agency responsible for the criminal investigation advises that staff questioning may occur.]**

 When an inmate's misconduct may also be the subject of criminal prosecution, it is not necessary to await the outcome of the criminal trial before taking disciplinary action, unless there has been a request for such delay by the prosecuting or investigating agency.  (Staff are referred to the guidelines contained in the Program Statement on Hostage Situations).  An inmate who is the subject of a criminal prosecution for institutional violations will not be transferred from the jurisdiction of the trial court without the consent of the appropriate U.S. Attorney of the court in which the case is pending.

 **[(2) The inmate may receive a copy of the Incident Report prior to being seen by the investigating agency.  The**

investigating officer (Bureau of Prisons) shall give the inmate a

**copy of the Incident Report at the beginning of the
investigation, unless there is good cause for delivery at a later
date, such as absence of the inmate from the institution or a
medical condition which argues against delivery.  If the
investigation is delayed for any reason, any employee may deliver
the charge(s) to the inmate.  The staff member shall note the
date and time inmate received a copy of the Incident Report.  The
investigator shall also read the charge(s) to the inmate and ask
for the inmate's statement concerning the incident unless it
appears likely that the incident may be the subject of criminal
prosecution.  The investigator shall advise the inmate of the
right to remain silent at all stages of the disciplinary process
but that the inmate's silence may be used to draw an adverse
inference against the inmate at any stage of the institutional
disciplinary process.  The investigator shall also inform the
inmate that the inmate's silence alone may not be used to support
a finding that the inmate had committed a prohibited act.  The
investigator shall then thoroughly investigate the incident.  The
investigator shall record all steps and actions taken on the
Incident Report and forward all relevant material to the staff
holding the initial hearing.  The inmate does not receive a copy
of the investigation.  However, if the case is ultimately
forwarded to the Discipline Hearing Officer, the DHO shall give a
copy of the investigation and other relevant materials to the
inmate's staff representative for use in presentation on the
inmate's behalf.]**

When the inmate did not receive a copy of the Incident
Report at the beginning of the investigation, the reason(s) for
this should be stated in the investigative portion of the
Incident Report.  The investigator shall document in the
investigative portion of the Incident Report the fact that the
inmate has been advised of the right to remain silent.  Comments
about the inmate's attitude may be included with the inmate's
statement on the charge(s).

To the extent practicable, the inmate's statements offering
a rationale for his or her conduct or for the charges against him
or her should be investigated.  For example, an inmate who has
received an Incident Report based on a "positive" urine test may
claim this result comes from either:

    (a)  permissible medication the inmate has been given; or
    (b)  from a combination of medications the inmate is
        taking.

In the first situation, the investigator would contact the
hospital to determine if the inmate is receiving medication which
contains the reported compound detected in the urinalysis.  In
the second situation, the investigator should confirm that the

inmate was authorized to take the stated medication.  When

necessary, the investigator should ask the Correctional Services Administrator, Regional Office to contact the testing laboratory to determine if the combined medication could result in a "false positive" test.  Institution staff should not contact the testing laboratory themselves.

With respect to urine testing, it is noted that while an inmate can challenge the results of the urine test, and this may be investigated by the investigator and considered by the discipline committee(s), the validity or accuracy of the testing process itself is not subject to investigation by the investigator or consideration by the DHO.  This requirement is necessary because neither the investigator nor the DHO has the experience necessary to assess the validity or accuracy of the laboratory process.

An inmate who wishes to challenge the testing process should be advised to use the Administrative Remedy Procedure.  An inmate can challenge the proper handling of the sample, and evidence challenging that aspect of the process should be investigated and considered. The investigator should talk to those persons with direct and relevant information, and summarize their statements. The disposition of evidence should be recorded.  Often, the investigator will want to talk to the reporting employee to obtain a report firsthand and to clarify any question(s) the investigator may have. Under Comments and Conclusions, the investigator may include the investigator's:

        (a) comments on the inmate's prior record and behavior,
        (b) analysis of any conflict between witnesses, and
        (c) conclusions of what in fact happened.

Staff who are involved in preparation of incident reports and in investigations are referred to Chapter 7, page 5, for guidelines on the use of confidential informant information.

2.  <u>CHRONOLOGICAL DISCIPLINARY RECORD</u>.  To provide an accurate and comprehensive review of an inmate's disciplinary record, a chronological disciplinary record is to be kept on each inmate. This record is to be maintained in the disciplinary section of the inmate central file for prohibited acts occurring prior to December 1, 1990.  For incidents occurring after that date, the information is maintained on SENTRY in the inmate's Chronological Disciplinary Record.  The chairman of the UDC or the DHO taking <u>final</u> action is responsible for ensuring that the required information is entered into SENTRY.

The Appendix to Chapter 5 contains a copy of the Chronological Disciplinary Record form to be used for incidents occurring prior to December 1, 1990.

(<u>Note</u>: Disciplinary information is not to be recorded on the

inmate's work assignment sheet.)

**DATA ENTRY INSTRUCTIONS**

Each Discipline Hearing Officer (DHO) or Unit Discipline Committee (UDC) is responsible for the validity and accuracy of this data, and it is critical that they are reported correctly and uniformly.  The DHO and UDC Chairperson are responsible for data entry on all cases resolved at their level.

PROHIBITED ACTS.  The data collection requirements only apply to the following prohibited acts:

- Code 100 - Killing
- Code 101 - Assaulting any Person (Serious)...
- Code 107 - Taking Hostages
- Code 203 - Threatening Another with Bodily Harm...
- Code 205 - Engaging in Sexual Acts
- Code 206 - Making Sexual Proposals or Threats to Another
- Code 224 - Assaulting any Person (Less Serious)..

SENTRY SCREENS.  When an inmate is found to have committed one or more of the seven prohibited acts listed above, the DHO or UDC is required to enter data on the following SENTRY screens:

- Add Hearings/Findings or Update Status After Procedural Hearing

- Update Hearing/Findings or Execute/Unexecute Sanctions Because data collection is not required at the charging or accusatory levels, there are no additional requirements for the Update Charges screen.

DATA KEYING REQUIREMENTS.  Four characters are available to enter data on a particular act, and the fourth is always used for aiding and abetting or attempts (for example, code 101**A**).

For the seven prohibited acts specified above, SENTRY allows for three additional characters (fields) for DHOs or UDCs to input data:

- the first field requires data on the **type of victim**,
- the second field requires data on the **type of weapon** used, and
- the third field applies to the **nature of the injury**.

A fourth, totally separate field is for recording whether the incident was referred for prosecution.

Type of Victim.  The DHO and UDC Chairman must select one of the three codes that best identifies the status of the victim, and enter the appropriate code in the Additional Tracking Identifier (ATI) field for the prohibited act (e.g., ATI.: S, ATI.: O):

PS 5270.07
CN 10 7/30/98
Chapter 5, Attachment A - Page 2

I = Inmate
S = Staff
O = Other

■ There can be only one victim for each prohibited act.
When there are multiple victims (e.g., two or more inmates,
or one staff member and one inmate), there must be multiple
prohibited acts against the inmate.  If there are multiple
acts for the same code, they must be keyed under separate
Incident Report numbers even though the finding could be
based on a single Incident Report.

■ "Other" shall be entered when the type of victim is not
an inmate or a Bureau employee (i.e, visitor, contracting
staff, U.S. Marshal, etc.).

<u>Type of Weapons Classification</u>.  DHOs must carefully review the
list of weapons codes starting from the top (code "A") to the
bottom (code "N").  Using this rank-ordered review process,
select the **first** code that **best** describes the most serious weapon
the inmate actually used or attempted to use in the commission of
the offense.  The selection shall be placed in the second
position directly after the type of victim (e.g. ATI.: S<u>**B**</u>, ATI.:
O<u>**F**</u>):

A     gun
B     sharp object (used to inflict cutting type injury)
C     pointed object (used to inflict stabbing type injury)
D     solid\blunt object (thrown or used to hit)
E     toxic or flammable fluids or substances
F     fists\hands
G     feet\legs
H     bodily fluids\waste (spit, urine, feces, blood, etc.)
J     teeth
K     head
L     water
M     other or unknown
N     no weapon

■ Weapons refers to the objects, instruments and/or
substances listed above that the inmate was in control of at
the time of the offense, and was considered an element of
the offense.

■ When an inmate threatens to use a weapon that was not
readily available or under his or her control at the time of
the incident, the DHO must select code "N", "no weapon."

<u>Nature of Injury Assessment</u>.  The level of injury is best
assessed by considering the nature of medical treatment required,
if any.  The DHO must choose the injury code that best describes

the most serious injury actually suffered by the victim as a

result of the prohibited act.  The choice must be placed in the third position directly after the type of weapon (e.g., ATI.: SB**4**, ATI.: OF**1**):

    1  **No injury** - The victim or medical staff reported no injuries.

    2  **Minor injury** - The victim received minor injuries which may have been treated at the facility, or treated at the facility with a possible recommendation for a non-inmate victim to consult with his or her own physician.

    3  **Moderate injury** - The victim received more serious injuries that generally require treatment at an outside hospital, or in the case of non-inmate victims, treatment by their own physicians.  Moderate injuries are not judged to be life-threatening.

    4  **Major injury** - The victim received injuries that are life threatening, requiring emergency medical treatment at an outside hospital.

    5  **Fatal injury** - The victim received injuries resulting in the loss of life.

**Example One**:  ATI.: **SB4** - "Staff-**S**" victim with the weapon being a "sharp object-**B**", and "major injuries-**4**" sustained.

**Example Two**:  ATI.: **OF1** - "Other-**O**" victim with the weapon being "fists/hands-**F**", and "no injury-**1**" sustained.

REFERRALS FOR PROSECUTION(RFP).  For this system to provide accurate data, it is imperative that Special Investigative Supervisors(SIS) and Special Investigative Agents(SIA) refer all assaults for prosecution and record the data in section 25 of the Incident Report. The following is a totally separate field, and the DHO shall key either accepted or declined for prosecution by the Assistant U.S. Attorney in the:

- Add Hearings/Findings
- Update Status After Procedural Hearing,
- Update Hearing/Findings, or
- Execute/Unexecute Sanctions screens.

The SIS or SIA shall document this information under "Other Facts" in section 25 of the Incident Report (e.g., RFP.: A for accepted or RFP.: D for declined).

U.S. Department of Justice
Federal Bureau of Prisons

P.S. 5270.07
December 29, 1987
Appendix 5, Page 1

CHRONOLOGICAL DISCIPLINARY RECORD

INMATE'S NAME: _____

REGISTER NO.: _____

| INSTITUTION AND UNIT | DATE OF FINAL ACTION | FINAL ACTION TAKEN BY: UDC/DHO | CODE#/TITLE OF PROHIBITED ACT/S COMMITTED | SIGNATURE OF UDC CHAIRMAN/DHO (LAST NAME PRINTED) |
|---|---|---|---|---|
| | | | | |
| | | | | |
| ACTION TAKEN: | | | | |
| | | | | |
| ACTION TAKEN: | | | | |
| | | | | |
| ACTION TAKEN: | | | | |
| | | | | |
| ACTION TAKEN: | | | | |
| | | | | |
| ACTION TAKEN: | | | | |
| | | | | |
| ACTION TAKEN: | | | | |

Central File - Section 4

CHAPTER 6

INITIAL HEARING

1.  [INITIAL HEARING §541.15.  The Warden shall delegate to one
or more institution staff members the authority and duty to hold
an initial hearing upon completion of the investigation.  In
order to ensure impartiality, the appropriate staff member(s)
(hereinafter usually referred to as the Unit Discipline Committee
(UDC)) may not be the reporting or investigating officer or a
witness to the incident, or play any significant part in having
the charges referred to the UDC.  However, a staff member
witnessing an incident may serve on the UDC where virtually every
staff member in the institution witnesses the incident in whole
or in part.  If the UDC finds at the initial hearing that an
inmate has committed a prohibited act, the UDC may impose minor
dispositions and sanctions.  When an alleged violation of Bureau
rules is serious and warrants consideration for other than minor
sanctions, the UDC shall refer the charges to the Discipline
Hearing Officer for further hearing.  The UDC must refer all
greatest category charges to the DHO.  The following minimum
standards apply to initial hearings in all institutions.

  a.  Staff shall give each inmate charged with violating a
Bureau rule a written copy of the charge(s) against the inmate,
ordinarily within 24 hours of the time staff became aware of the
inmate's involvement in the incident.

  b.  Each inmate so charged is entitled to an initial hearing
before the UDC, ordinarily held within three work days from the
time staff became aware of the inmate's involvement in the
incident.  This three work day period excludes the day staff
became aware of the inmate's involvement in the incident,
weekends, and holidays.]

   For example, if staff become aware of an inmate's involvement
in the incident on a Tuesday and provide the inmate with a copy
of the report on Tuesday, the three work day period starts the
following day, Wednesday.  The UDC hearing must ordinarily be
held by Friday.

  [c.  The inmate is entitled to be present at the initial
hearing except during deliberations of the decision maker(s) or
when institutional security would be jeopardized by the inmate's
presence.  The UDC shall clearly document in the record of the
hearing reasons for excluding an inmate from the hearing.  An
inmate may waive the right to be present at this hearing provided
that the waiver is documented by staff and reviewed by the UDC.

**A waiver may be in writing, signed by the inmate, or if the inmate refuses to sign a waiver, it shall be shown by a memorandum signed by staff and witnessed by a second staff member indicating the inmate's refusal to appear at the hearing.  The UDC may conduct a hearing in the absence of an inmate when the inmate waives the right to appear.  When an inmate escapes or is otherwise absent from custody, the UDC shall conduct a hearing in the inmate's absence at the institution in which the inmate was last confined.]**

See Chapter 10 for a sample Waiver of Appearance form, BP-307(52).

**[d.  The inmate is entitled to make a statement and to present documentary evidence in the inmate's own behalf.**

**e.  The Unit Discipline Committee may drop or informally resolve any Moderate or Low Moderate charge.  The UDC shall expunge the inmate's file of the Incident Report if the charge is dropped or informal resolution is accomplished.]**

A record of any informal resolution in the 300 or 400 codes between the inmate and the UDC is to be maintained by the Captain (See Chapter 5, page 1, for further information on informal resolution procedures).

**[f.  The Unit Discipline committee shall consider all evidence presented at the hearing and shall make a decision based on at least some facts, and if there is conflicting evidence, it must be based on the greater weight of the evidence.  The UDC shall take one of the following actions:**

**(1)  Find that the inmate committed the prohibited act charged and/or a similar prohibited act if reflected in the Incident Report;**

**(2)  Find that the inmate did not commit the prohibited act charged or a similar prohibited act if reflected in the Incident Report;or**

**(3)  Refer the case to the DHO for further hearing.]**

The phrase "some facts" refers to facts indicating the inmate did commit the prohibited act.  The phase "greater weight of the evidence" refers to the merits of the evidence, not to its quantity nor to the number of witnesses testifying.

Staff members serving on the UDC are referred to Chapter 7, page 5, for guidelines on using confidential informant information.

**[The UDC shall give the inmate a written copy of the decision and disposition by the close of business the next work day.  Any action taken as a minor disposition is reviewable under the Administrative Remedy Procedure (see Part 542 of this Chapter).]**

The chairman of the UDC is to sign Part II of the Incident Report.  This signature serves as both a certification of those persons serving on the UDC and that the completed Part II accurately reflects the UDC proceedings.  The names of other UDC members, if any, participating in the hearing are to be noted in Part II of the Incident Report in the space provided.

If a UDC member wishes to dissent from the UDC action, that committee member should prepare a separate memorandum to the record, stating the reasons for dissent.  Unless there are extenuating circumstances (e.g., the dissenting staff member is out of the institution), the memorandum of dissent must be filed within three working days from the date the UDC chairman signs the Incident Report.  The memorandum is to be placed in section 4 of the inmate central file with the other disciplinary records, absent a specific determination that the dissent is "FOI-Exempt" (e.g., refers to confidential information).  No notation of the dissent is made on the Incident Report, nor is a copy of the dissent provided the inmate as a part of the disciplinary package.  An inmate or third party request for a copy of the dissent is to be handled as a Freedom of Information/Privacy request.

Part 542 refers to Program Statement on Administrative Remedy Procedure for Inmates.  In addition to a review under the administrative remedy procedure, the Warden or designee is to audit and review disciplinary hearings and dispositions to assure conformity with the provisions of this policy.

**[g.  The UDC shall prepare a record of its proceedings which need not be verbatim.  A record of the hearing and supporting documents are kept in the inmate's file.]**

\*   When the UDC finds that the inmate committed the prohibited act charged and/or a similar prohibited act reflected in the Incident Report, the UDC chairman shall ensure that the required information is entered into SENTRY in the inmate's Chronological Disciplinary Record.                                        \*

**[h.  When an alleged violation of Bureau rules is serious and warrants consideration for other than minor sanctions (G thru P), the UDC shall refer the charge(s) without indication of findings as to commission of the alleged violation to the Discipline Hearing Officer (DHO) for hearing and disposition.  The UDC shall forward copies of all relevant documents to the DHO with a brief statement of reasons for the referral along with any**

recommendations for appropriate disposition if the DHO finds the inmate has committed the act charged and/or a similar prohibited

**act.  The inmate whose charge is being referred to the Discipline Hearing Officer may be retained in administrative detention or other restricted status, but the UDC may not impose a final disposition if the matter is being referred to the DHO.]**

The UDC chairman shall record the reasons for the referral along with recommendations for appropriate disposition in the "Committee Action" section of the Incident Report.  Such recommendations are only recommendations to be considered, and are contingent upon a DHO finding that the inmate committed the prohibited act.

**[i.  When charges are to be referred to the Discipline Hearing Officer, the UDC shall advise the inmate of the rights afforded at a hearing before the DHO.  The UDC shall ask the inmate to indicate a choice of staff representative, if any, and the names of any witnesses the inmate wishes to be called to testify at the hearing and what testimony they are expected to provide.  The UDC shall advise the inmate that the inmate may waive the right to be present at the Institution Discipline hearing, but still elect to have witnesses and/or a staff representative appear in the inmate's behalf at this hearing.]**

Staff shall ask an inmate to list on the appropriate form (Notice of Institution Discipline Committee Hearing Before the Discipline Hearing Officer (DHO) - see Chapter 10) all witnesses (including outside witnesses) requested to appear whether they are allowed to appear or are excluded by the DHO.  Unless a witness is listed in advance of the hearing the witness ordinarily will not be called before the DHO.

If an inmate has waived the right to appear before the Unit Discipline Committee, the UDC shall ensure that a staff member advises the inmate of the rights afforded at a hearing before the Discipline Hearing Officer (Inmate Rights at Discipline Hearing and Notice of Discipline Hearing Before the Discipline Hearing Officer (DHO) - see Chapter 10).

**[j.  When the Unit Discipline Committee holds a full hearing and determines that the inmate did not commit a prohibited act of High, Moderate, or Low Moderate Severity, the UDC shall expunge the inmate's file of the Incident Report and related documents.  The UDC must refer to the Discipline Hearing Officer all incidents involving prohibited acts of Greatest Severity.]**

Chapter 7, Discipline Hearing Officer, discusses expungement procedures and the retention of findings for research purposes.

**[k.  The UDC may extend time limits imposed in this section for a good cause shown by the inmate or staff and documented in the record of the hearing.]**

The UDC is to be notified by appropriate staff (e.g., investigating officer) when it appears that an extension of time limits is necessary.  The UDC is to ensure that the inmate is advised of the delay, including, where appropriate, the reasons for the delay.

The Warden's approval is required for any extension beyond five work days.  When staff decide and approve the extension, the inmate is to be provided with written reasons for the extension, and a copy of the reasons is to be made a part of the UDC record.

\*     2.  <u>UDC TRAINING AND CERTIFICATION</u>.  A staff member may not sit on the Unit Discipline Committee (UDC) without first successfully completing the self-study program for UDC certification.  The program involves completion of a series of training modules.

Each Warden shall select at least one UDC Trainer to review and monitor the progress of staff participating in the self-study program.  This assignment will be a collateral position.  The Trainer's specific responsibilities have been detailed in an Instructor's Manual.                                              \*

P.S. 5270.07
December 29, 1987
Chapter 7, Page 1

CHAPTER 7

DISCIPLINE HEARING OFFICER

1.   **[ESTABLISHMENT AND FUNCTIONING OF THE DISCIPLINE HEARING OFFICER §541.16.**

\*      **a.   Each Bureau of Prisons institution shall have an independent hearing officer (DHO) assigned to conduct administrative fact-finding hearings covering alleged acts of misconduct and violations of prohibited acts, including those acts which could result in criminal charges.  In the event of a serious disturbance or other emergency, or if an inmate commits an offense in the presence of the DHO, an alternate Discipline Hearing Officer will be appointed to conduct hearings with approval of the appropriate Regional Director.  If the institution's DHO is not able to conduct hearings, the Warden shall arrange for another DHO to conduct the hearings.  This person must be trained and certified as a DHO, and meet the other requirements for DHO.]**

A Discipline Hearing Officer may not conduct hearings without receiving specialized DHO training and without passing a DHO certification test.  Passing this test ensures that the person is knowledgeable of the requirements of this Program Statement and of the functions of Inmate Discipline.

The alternate DHO may be a Regional Discipline Hearing Administrator, a DHO from another institution, or a Captain from another institution who has passed a DHO certification test.     \*

   **[b.   In order to insure impartiality, the DHO may not be the reporting officer, investigating officer, or UDC member, or a witness to the incident or play any significant part in having the charge(s) referred to the DHO.**

   **c.   The Discipline Hearing Officer shall conduct hearings, make findings, and impose appropriate sanctions for incidents of inmate misconduct referred for disposition following the hearing required by §541.15 before the UDC.  The DHO may not hear any case or impose any sanctions in a case not heard and referred by the UDC.  Only the Discipline Hearing Officer shall have the authority to impose or suspend sanctions A through F.**

\*      **d.   The Warden at each institution shall designate a staff member, hereinafter called the Segregation Review Official (SRO), to conduct reviews of inmates placed in disciplinary segregation and administrative detention in accordance with the requirements of §541.20 and §541.22.]**

§541.20 and §541.22 are located in Chapter 9 of this Program
Statement.  These reviews will ordinarily be conducted by the
Captain, but the Warden may designate another person (such as a

Manager of the Special Housing Unit) to conduct the reviews, provided that person is trained in conducting the reviews and is familiar with (certified in) inmate discipline matters.     *

2.   [PROCEDURES BEFORE THE DISCIPLINE HEARING OFFICER §541.17. The Discipline Hearing Officer shall proceed as follows:

   a.   The Warden shall give an inmate advance written notice of the charge(s) against the inmate no less than 24 hours before the inmate's appearance before the DHO unless the inmate is to be released from custody within that time.  An inmate may waive in writing the 24-hour notice requirement.

   b.   The Warden shall provide an inmate the service of a full time staff member to represent the inmate at the hearing before the Discipline Hearing Officer should the inmate so desire.  The Warden, the DHO or alternate DHO, the reporting officer, investigating officer, a witness to the incident, and UDC members involved in the case may not act as staff representative.  The Warden may exclude other staff from acting as staff representative in a particular case when there is a potential conflict in roles.  The staff representative shall be available to assist the inmate if the inmate desires by speaking to witnesses and by presenting favorable evidence to the DHO on the merits of the charge(s) or in extenuation or mitigation of the charge(s).  The DHO shall arrange for the presence of the staff representative selected by the inmate.  If the staff member selected declines or is unavailable because of absence from the institution, the inmate has the option of selecting another representative, or in the case of an absent staff member of waiting a reasonable period for the staff member's return, or of proceeding without a staff representative.  When several staff members decline this role, the Warden shall promptly appoint a staff representative to assist the inmate.  The DHO shall afford a staff representative adequate time to speak with the inmate and interview requested witnesses where appropriate.  While it is expected that a staff member will have had ample time to prepare prior to the hearing, delays in the hearing to allow for adequate preparation may be ordered by the DHO.]

An inmate's staff representative need not know the identity of confidential informants.  While the substance of confidential information may at the discretion of the DHO be divulged to, and challenged by, a staff representative, the reliability of confidential informants may not be questioned by the staff representative.  The DHO is the person responsible for establishing reliability before the information provided may be used to support a finding at the discipline hearing.

[When it appears that the inmate is not able to properly make a presentation on his own behalf (for example, an illiterate inmate), the Warden shall appoint a staff representative for that inmate, even if one is not requested.]

While a staff member may decline to serve as representative, this is to be done only for good reason, with the reason stated on the staff representative form.  Chapter 10 contains a copy of this form.

**[c.  The inmate is entitled to make a statement and to present documentary evidence in the inmate's own behalf.  An inmate has the right to submit names of requested witnesses and have them called to testify and to present documents in the inmate's behalf, provided the calling of witnesses or the disclosure of documentary evidence does not jeopardize or threaten institutional or an individual's security.  The DHO shall call those witnesses who have information directly relevant to the charge(s) and who are reasonably available.  This may include witnesses from outside of the institution.  The inmate charged may be excluded during the appearance of the outside witness. The appearance of the outside witness should be in an area of the institution in which outside visitors are usually allowed. The DHO need not call repetitive witnesses.  The reporting officer and other adverse witnesses need not be called if their knowledge of the incident is adequately summarized in the Incident Report and other investigative materials supplied to the DHO.  The DHO shall request submission of written statements from unavailable witnesses who have information directly relevant to the charge(s).  The DHO shall document reasons for declining to call requested witnesses in the DHO report, or, if the reasons are confidential, in a separate report, not available to the inmate. The inmate's staff representative, or when the inmate waives staff representation, the DHO, shall question witnesses requested by the inmate who are called before the DHO.  The inmate who has waived staff representation may submit questions for requested witnesses in writing to the DHO.  The inmate may not question any witness at the hearing.]**

\*  When an inmate is excluded during the appearance of a witness, including an outside witness, the DHO shall inform the inmate, prior to the close of the hearing, of the substance of the witness's testimony, except where institutional security would be jeopardized.

There is no minimum or maximum number of witnesses who may be called before the DHO.  The number of witnesses called should be based on the particular situation and the information to be presented by the witnesses.  While several eyewitnesses may be called, it is expected that the number of character witnesses would be much more limited.  A limited number of
\*  character witnesses, at the discretion of the DHO, may be called in mitigation of the charges.

The DHO may not refuse to call a witness who is reasonably available (e.g., on a different shift) and who has information directly relevant to the charge solely because the witness (staff or inmate) does not wish to appear.  An inmate witness can be

required to attend the hearing, and that inmate's failure to
cooperate with the DHO can result in disciplinary action (e.g.,
for refusing to obey an order of a staff member, Prohibited Act

#307).  The DHO may notify the inmate when a witness doesn't wish
to testify.  This may be warranted when it appears that to force
the witness' appearance could result in threats to persons'
safety, or in disruption to security or to orderly running of the
institution.

The statement of an inmate requesting a witness, without more, is
not sufficient to mandate the witness's appearance at the
Institution Discipline Hearing.  There must be an indication of
the requested witness having information directly relevant to the
charges.  The DHO may also refuse to call numerous character
witnesses on behalf of the inmate.  The DHO may remind an inmate
witness that inmate's statement at the hearing must be "true" to
the best of the inmate's knowledge.  False statements at a
hearing can result in an Incident Report for lying or providing a
false statement to a staff member (Prohibited Act #313).  The DHO
may need to take steps to protect an inmate witness who is called
to appear at the hearing.

On occasion, an inmate may request a witness who is not
reasonably available to testify in person (e.g., an inmate from
another institution).  When this occurs, the DHO will ordinarily
allow sufficient time for the written statement of the
witness(es) to be received, if that witness is indicated to have
relevant information.  If an extension is not granted, the DHO
shall clearly state in the record of the hearing reasons for not
granting this delay.

   **[d.  An inmate has the right to be present throughout the
DHO hearing except during a period of deliberation or when
institutional security would be jeopardized.**

**The DHO must document in the record the reason(s) for excluding
an inmate from the hearing.  An inmate may waive the right to be
present at the hearing, provided that the waiver is documented by
staff and reviewed by the DHO.  A waiver may be in writing,
signed by the inmate, or if the inmate refuses to sign a waiver,
it shall be shown by a memorandum signed by staff and witnessed
by a second staff member indicating the inmate's refusal to
appear at the hearing.  The DHO may conduct a hearing in the
absence of an inmate when the inmate waives the right to appear.
When an inmate escapes or is otherwise absent from custody, the
Discipline Hearing Officer shall conduct a hearing in the
inmate's absence at the institution in which the inmate was last
confined.  when an inmate returns to custody following absence
during which sanctions were imposed by the DHO (or the
predecessor Institution Discipline Committee (IDC)), the Warden
shall have the charges reheard before the Discipline Hearing
Officer ordinarily within 60 days after the inmate's arrival at
the institution to which the inmate is designated after return to**

custody, and following appearance before the Unit Discipline Committee at that institution.  The USC shall ensure that the inmate has all rights required for appearance before the

**Discipline Hearing Officer, including delivery of charge(s), advisement of the right to remain silent and other rights to be exercised before the Discipline Hearing Officer.  All the applicable procedural requirements before the Discipline Hearing Officer apply to this rehearing, except that written statements of witnesses not readily available may be liberally used instead of in-person witnesses.  The DHO upon rehearing may affirm the earlier action taken, may dismiss the charge(s), may modify the finding of the original DHO as to the offense which was committed, or may modify but may not increase the sanctions previously imposed in the inmate's absence.]**

When an inmate escapes, and is in local custody where a hearing may be held, an in-person hearing rather than in-absentia may be held, at the discretion of the DHO.

See Chapter 10 for the appropriate Waiver of Appearance form.  Although an inmate may waive the right to be present at the hearing, the inmate may elect to have a staff representative and witness(es) appear in the inmate's behalf at this hearing.  The governing sanctions are those in effect at the   time of the inmate's absenting himself (or departure) from custody, not those in effect at the time of return.

**[e.  The DHO may refer the case back to the UDC for further information or disposition.  The DHO may postpone or, at any time prior to making a decision as to whether or not a prohibited act was committed, may continue the hearing until a later date whenever further investigation or more evidence is needed.  A postponement or continuance must be for good cause (determined by the DHO) shown by the inmate or staff and should be documented in the record of the hearing.]**

The DHO may refer the case bank to the UDC upon determining that the available evidence does not warrant DHO involvement.  When this occurs, the UDC will either dispose of the charges at a UDC hearing or provide additional, sufficient evidence to warrant Discipline Hear Officer action.

**[f.  The DHO shall consider all evidence presented at the hearing.  The decision of the  DHO shall be based on at least some facts, and if there is  conflicting evidence, it must be based on the greater weight of the evidence.  The DHO shall find that the inmate either:]**

**[(1) Committed the prohibited act charged and/or a similar prohibited act if reflected in the Incident Report; or**

**(2) Did not commit the prohibited act charged or a similar prohibited act if reflected in the Incident Report.]**

\*      The DHO may consider negative information (e.g., known peddler of contraband) as part of the fact finding process.  The phrase "some facts" refers to facts indicating the inmate did commit the prohibited act.  The phrase "greater weight of the evidence" refers to the merits of the evidence, not to its quantity nor to the number of witnesses testifying.

**[When a discipline decision is based on confidential informant information, the UDC or DHO shall document, ordinarily in the hearing report, the finding as to the reliability of each confidential informant relied on <u>and the factual basis for that finding</u>. When it appears that this documentation in the report would reveal the confidential informant's identity, the finding as to the reliability of each confidential informant relied on and  the factual basis for that finding shall be made part of the hearing record in a separate report, prepared by the UDC chairman or DHO, not available to the inmate.]**

Confidential informant information should not be used, nor relied on in the report, when other independent information is available to support the same finding as is supported by the confidential information.  Just because there has been an informant who has opened up an investigation or who has been part of an investigative process does not mean that informant must be referred to in the findings, so long as there is at least some other facts or independent evidence to rely on.

An informant is a person (non-staff, ordinarily an inmate) who provides staff (usually at the person's initiation) information about the commission of an offense or about misconduct in an institution.  A confidential informant is one whose identity must be withheld and protected for the individual's personal safety.  Ordinarily, the decision (finding that an inmate committed a prohibited act) must be supported by more than one reliable confidential source.  If there is only one source, the confidential informant information must be corroborated by independently verified factual evidence linking the inmate charged to the prohibited act.  Uncorroborated confidential information from a single informant is <u>insufficient</u> as the sole basis for a finding that an inmate committed a prohibited act, <u>unless</u> the peculiar circumstances of the incident and the peculiar knowledge possessed by the confidential informant is convincing enough to show that the confidential informant's information must be reliable.  In an unwitnessed assault, for example, the statement of a seriously injured assault victim <u>could</u> be sufficient evidence to support a finding without corroborating evidence.

The reliability of a confidential informant must be established before the information provided may be used to support a finding by the UDC or DHO.  Reliability may be determined by a record of

past reliability or by other factors which reasonably convince
the UDC or DHO of the confidential informant's reliability.  The

staff member providing the information to the UDC or DHO shall
include a written statement of the frequency with which the
confidential informant has provided information, the period of
time during which the confidential informant has provided
information, and the degree of accuracy of that information.  If
reliability is based on factors other than a history of
reliability, those other factors supporting a determination of
reliability must be clearly specified.  Staff have an affirmative
obligation to determine whether there is any basis for concluding
that the confidential informant is providing false information.
Neither the UDC nor the DHO may consider information obtained in
exchange for the promise of a favor to support its finding.

All confidential information presented to the UDC or DHO shall be
in writing and must state facts and the manner in which the
confidential informant arrived at knowledge of those facts.  If
possible, the statement shall be signed by the confidential
informant.  If the confidential informant does not write a
statement, the staff member receiving the information shall
provide that information in language as close to the confidential
informant's as possible (actual words of confidential informant
where possible).  The  substance of the confidential informant
information must be known by all members of the decision-making
body.  The identity of a confidential informant must be known, at
a minimum, by the Discipline Hearing Officer.  Where the UDC does
not make a final disposition, but refers a case to the DHO, the
UDC need not know the identity of a confidential informant(s) or
the substance of the information provided.  Where the UDC makes a
final disposition, only the UDC chairman must know the identity
of the confidential informant(s).  The chairman of the UDC or DHO
shall include, in the record of the hearing, a statement of the
basis for finding that the information provided by the
confidential informant is reliable.

Confidential informants' statements shall, at a minimum, be
incorporated in discipline hearing reports by reference.  The UDC
or DHO shall document, ordinarily in the UDC or DHO report, the
finding as to the reliability of each confidential informant
relied on and the factual basis for that finding.  In providing
this information,, the report shall identify the specific
information relied on and the factual basis for that reliance.
When the Chairman of the UDC or the DHO decides that information
given by a single confidential informant is sufficient for
finding that the inmate committed the prohibited act, the
appropriate discipline hearing report should include a statement
giving the rationale for that decision.

When the Chairman of the UDC or the DHO determines that including
information in the Institution Discipline Hearing report would
not reveal the identity of the confidential informant, such
information will be included in that report.  When the Chairman
of the UDC or the DHO determines that including information in

the report might reveal the identity of the confidential

informant, the Chairman of the UDC (when a final decision) or the DHO shall prepare a separate report documenting the findings as to the reliability of each confidential relied on, the factual basis for that finding, and the specific information relied on and the factual basis for that reliance.  This separate report need not be placed in the inmate central file, but may be retained in a secure location so long as it is available for purposes of later administrative or judicial review, and so long as the separate report is incorporated by reference into the UDC or Institution discipline Hearing report.

Since information received anonymously does not meet the necessary reliability standard, such information may not be used as evidence relied on in making a finding.  Such information, however, may be used in the investigatory process.

**[g.  The Discipline Hearing Officer shall prepare a record of the proceedings which need not be verbatim.  This record must be sufficient to document the advisement of inmate rights, the DHO's findings, the DHO's decision and the specific evidence relied on by the DHO, and must include a brief statement of the reasons for the sanctions imposed.  The evidence relied upon, the decision, and the reasons for the actions taken must be set out in specific terms unless doing so would jeopardize institutional security. The DHO shall give the inmate a written copy of the decisions and disposition, ordinarily within 10 days of the DHO's decision.]**

The inmate should be given a copy of the decision even when there is a finding that the inmate did not commit the prohibited act.  See Chapter 10 for the appropriate Discipline Hearing Officer Report form.  The DHO is to sign the Discipline Hearing Report.  This signature certifies that the report accurately reflects the discipline hearing proceedings.

When relying on confidential informant information in making a finding, the DHO shall state on the record as to the reliability of this information and the factual basis underlying that finding.  (See Chapter 7, page 5, for a discussion of confidential informant information.)  If the testimony of conflicting witnesses (includes any witness, not only confidential informant) is presented, or there is other conflict in the evidence, the DHO should indicate in the record of the hearing the reason for believing the testimony of one witness(es) as opposed to another witness(es) or otherwise resolving the conflict.  When the DHO determines that including this information in the Discipline Hearing report would jeopardize institution security, the DHO may provide the required information in a separate report, not available to the inmate.

**[h.  A record of the hearing and supporting documents are to be kept in the inmate central file.]**

   When the DHO finds that the inmate committed the prohibited act
charged and/or a similar prohibited act reflected in the Incident
Report, the DHO shall ensure that the required information is
entered into SENTRY in the inmate's Chronological Disciplinary
Record.

   **[i.  The Discipline Hearing Officer shall expunge an inmate's
file of the Incident Report and related documents following a DHO
finding that the inmate did not commit a prohibited act.  The
requirement for expunging the inmate's file does not preclude
maintaining for research purposes copies of disciplinary actions
resulting in "not guilty" findings in a master file separate from
the inmate's institution file.  However, institution staff may
not use or allow the use of the contents of this master file in a
manner which would adversely affect the inmate.  Likewise, the
expungement requirement does not require the destruction of
medical reports or other reports relating to a particular inmate
which must be maintained to document medical or other treatment
given in a special housing unit.  If an inmate's conduct during
one continuous incident may constitute more than one prohibited
act, and if the incident is reported in a single Incident Report,
and if the DHO finds the inmate has not committed every
prohibited act charged, or if the DHO finds that the inmate has
committed a prohibited act(s) other than the act(s) charged, then
the DHO shall record those findings clearly and shall change the
Incident Report to show only the incident and code references to
charges which were proved.  Institution staff may not use the
existence of charged but unproved misconduct against the inmate.]**

   The Special Housing Unit Log Sheet is stamped "Charges
Expunged" and left in the central file.  The charges should also
be expunged from the Chronological Disciplinary Record on SENTRY.
The Warden shall establish local procedures for expungement for
the Incident Report and related documents as required by this
section.  It is suggested that, since the inmate has other
records of the disciplinary action and must be advised of the not
guilty finding, there should be copies of the Incident Report and
the Discipline Hearing Officer report maintained in research
files.  The reasons for the expungement should be stated in
section 5 of the discipline report.  These reasons do not have to
be stated on the inmate's copy of the report.

*   References to significant Prohibited Acts which are not
supported by disciplinary actions and hearings may not be
utilized by the Bureau of Prisons so as to have an adverse impact
on an inmate, specifically the forfeiture or disallowance of good
time or good conduct time or a parole recommendation.  Staff may
still maintain such references in an inmate's central file for
use by staff in making classification, administrative transfer
and other decisions involving the security and good order of the

institution if the following conditions are met:

(1)   References included in an inmate's central file must be maintained in an accurate manner.  For example, an inmate suspected of being involved in an escape attempt who was never found to have committed a violation of institution disciplinary regulations or was never charged with an offense due to a lack of evidence would have to have this lack of evidence noted in any reference to his alleged involvement in the escape attempt.

(2)   Placement of a reference to 100 or 200 severity level offenses not supported by disciplinary action in an inmate's central file may only be done with the written approval of the Warden of the institution where the incident occurred.  The Warden's written approval must be documented in the inmate's central file.  Approval of the Warden will signify that in the Warden's judgment this information is necessary for the proper management of the inmate.

Consistent with this Program Statement, staff shall pursue disciplinary action in appropriate instances.                    *

   j.  To insure that the disciplinary proceedings meet the prescribed procedural requirements, the DHO will prepare or cause to be prepared the DHO procedural checklist in Appendix 1 to this Chapter.  When there is a confidential informant, Appendix 2 shall be completed.  The information contained in these appendices will serve as a certification of the hearing procedures.  A copy of the checklist is to be attached to the discipline report placed in the inmate central file.

3.  **[DISPOSITIONS OF THE DISCIPLINE HEARING OFFICER § 541.18. The Discipline Hearing Officer has available a broad range of sanctions and dispositions following completion of the hearing. The Discipline Hearing Officer may do any of the following:**

   **a.  Dismiss any charge(s) upon a finding that the inmate did not commit the prohibited act(s).  The DHO shall order the record of charge(s) expunged upon such finding.**

   **b.  Impose any of sanctions A through P as provided in § 541.13.**

   **c.  Suspend the execution of a sanction it imposes as provided in § 541.13.]**

   See Chapter 4, Prohibited Acts and Disciplinary Severity Scale.

P.S. 5270.07
December 29, 1987
Chapter 7, Page 11

    The Warden or designee is to audit and review disciplinary
hearings and dispositions to assure conformity with the
provisions of this policy.  The Warden may return a disciplinary
action to the DHO for rehearing or other indicated action upon
determining that the disciplinary hearing and/or disposition was
not in conformity with the provisions of the disciplinary policy.
The Warden's reasons for this action must be documented in
writing.  The Warden may not order an increase in any valid
disciplinary sanction imposed.

P.S. 5270.07
December 29, 1987
Chapter 7, Appendix 1, Page 1

U.S. Department of Justice
Federal Bureau of Prisons

CHECKLIST FOR DHO ACTIONS

DATE:_____ REG. NO:_____
INSTITUTION:_____ DATE/INCIDENT:_____ DATE/HEARING:_____

RESPONSE:                          CATEGORY
YES  NO  N/A

    I. ADVANCE NOTICE OF CHARGE

___ ___ ___    (1)   The inmate was given advance written notice of the
charge (s) against him _____ (date) at_____ (hour), which
was more than 24 hours before the inmate's appearance before
the DHO.
(2)   If the answer to #1 is no, because there was less than
24-hour notice (____), or was to be released in less than 24
hours (____).

    II. APPEARANCE

___ ___ ___    (3)   The inmate appeared at the hearing.  If no, the reason
was:
_____

    III. STAFF REPRESENTATION

___ ___ ___    (4)   The inmate requested a staff representative and that
staff representative appeared.  The representative had a
copy of "DUTIES OF STAFF REPRESENTATIVE," and indicated an
understanding of those duties.
___ ___ ___    (5) The inmate did not request a Staff Representative and
thereby waived the right to staff representation.
___ ___ ___    (6)   The inmate requested a representative who refused or
was unable to appear; and the inmate chose to continue the
hearing in the absence of the requested representative after
being advised of the option to postpone the hearing in order
to obtain another representative.  Because of staff
declinations to appear, _____ was appointed to represent
the inmate and appeared on the inmate's behalf.

    IV. WITNESSES AND DOCUMENTARY EVIDENCE

___ ___ ___    (7)   The inmate waived the right to call witnesses.
(8)   The inmate requested witnesses.
   A. The requested witnesses appeared & statements are
summarized in the record.
   B. Reasons for not calling the witnesses are documented in
the record (i.e., repetitive or adverse witnesses if
their knowledge is adequately summarized in the
incident report or other investigative materials
supplied to the DHO).
   C. Written statements of unavailable witnesses were
submitted, were considered, and are included in the
record.
_____    (9)   The inmate submitted written documentation which was

considered by the DHO?  If yes, list the documents:_____
_____  ____ (10) The inmate's statement to the DHO is summarized in the
record.  If no, it is because ( ) the inmate declined to
make a statement or ( )_____

P.S. 5270.07
December 29, 1987
Chapter 7, Appendix 1, Page 2

DATE:_____REG. NO:_____

YES   NO   N/A      V. USE OF CONFIDENTIAL INFORMANT INFORMATION

____  ___  ____     (11) Confidential informant information that might
                    identify the confidential informant was considered by
                    the DHO and this information was not provided to the
                    inmate but is documented in a separate record.  The
                    confidential informant (s) has have been determined to
                    be reliable because:_____

                    VI. FINDINGS AND SPECIFIC EVIDENCE

____  ___  ____     (12) The findings of the DHO are supported by some
                    facts.  If there was conflicting evidence the findings
                    are supported by the more credible evidence.
____  ___  ____     (13) There is some evidence to support each finding &
                    conclusion.
____  ___  ____     (14) The specific evidence relied on is adequately
                    documented in the record with specific evidence and
                    facts cited (physical evidence, observations, written
                    documentation, etc).

                    VII. SANCTIONS:

      ___  ____     (15) The sanction imposed is proportionate to the
                    offense committed.
____  ___  ____     (16) The sanction imposed is authorized by the offense
                    severity, which is: _____
                    _____
____  ___  ____     (17) The reasons for the sanction are adequately
                    documented in the record of the hearing, or in a
                    separate report.

                    VIII. OTHER

                    This section should be used for unusual aspects of the
                    case, such as inmate competency, UDC proceedings, DHO
                    disqualification issues, or Special Housing Unit
                    questions. _____
                    _____
                    _____
                    _____

THIS CHECKLIST WAS COMPLETED BY DHO:_____
                                              PRINT OR TYPE

SIGNATURE OF THE DHO:_____

PLACE OF THE DHO HEARING:_____

CC:   CENTRAL FILE

ORIGINAL TO BE ATTACHED TO DHO REPORT

P.S. 5270.07
December 29, 1987
Chapter 7, Appendix 2, Page 1

**U.S. DEPARTMENT OF JUSTICE**
**BUREAU OR PRISONS**

### CONFIDENTIAL INFORMANT INFORMATION

This form concerns the information provided by a confidential informant in connection with the investigation for an incident report dated _____ concerning inmate _____Reg. No. _____.

**PART 1.   (To be completed by investigator)**

I.   Set out below are the facts provided by the confidential informant and a complete description of the manner in which the informant arrived at knowledge of these facts.  If possible, the statement should be signed by the informant.  If the informant does not write a statement, the staff member receiving the information shall provide that information in language as close to the informant's as possible.

II.  Reliability is established by one of the following:

A. Past history of reliability

1.   The informant has provided information with the following frequency:

2.   This information was provided during the following period of time:

3.   The degree of accuracy of such information is:

cc:  Central File - FOI Exempt
     Captain's Office

P.S. 5270.07
December 29, 1987
Chapter 7, Appendix 2, Page 2

B.   The informant's reliability is based on factors other than a
     history of reliability:  (peculiar circumstances of the incident,
     independent factual corroboration, etc.)

III. I have determined that there was no reasonable basis for concluding
     the informant was providing false information and there was no promise
     of a favor made to the confidential informant in exchange for the
     information provided.

     _____  (time and date)

     _____
           (signature and title of investigator)

_____

**PART 2.   (To be completed by DHO)**

     The basis for the DHO's determination that the information is reliable
     is set out in Section II (A) or (B) (circle one).  The basis for the
     finding that the informant information is credible (explain why in
     light of other information known about incident or the informant, the
     information he or she has provided is worthy of belief) is as follows:

I am aware of the identity of this information and I hereby certify that
the substance of this informant's information was known to me.

     _____  (time and date)

     _____
           (signature and title)

CHAPTER 8
APPEALS OF DISCIPLINARY HEARING ACTIONS

**\* 1. [APPEALS FROM UNIT DISCIPLINE COMMITTEE OR DISCIPLINE HEARING OFFICER ACTIONS §541.19. At the time the Unit Discipline Committee or Discipline Hearing Officer gives an inmate written notice of its decision, the UDC or DHO shall also advise the inmate that the inmate may appeal the decision under Administrative Remedy Procedures (see Part 542 of this Chapter). An inmate's initial appeal of a decision of the DHO should be filed directly to the appropriate Regional Office. The inmate should forward a copy of the DHO report or, if not available at the time of filing, should state in his appeal the date of the DHO hearing and the nature of the charges against the inmate. On appeals, the appropriate reviewing official (the Warden, Regional Director or General Counsel) may approve, modify, reverse, or send back with directions, including ordering a rehearing, any disciplinary action of the Unit Discipline Committee or Discipline Hearing Officer but may not increase any valid sanction imposed.]**

The reviewing official for decisions by the UDC is the Warden. Appeals shall be initially filed on Form BP-229(13) (formerly "BP-9") with the Warden within 15 calendar days from the date that the inmate receives the written notice of its decision.

The reviewing official for decisions by the DHO is the Regional Director. Appeals shall be initially filed on Form BP-230(13) (formerly "BP-10") with the appropriate Regional Director within 20 calendar days from the date that the inmate receives the written notice of decision. The Warden may also review DHO hearings and appeals, to the extent he/she considers necessary, to assure substantial compliance with the provisions of the discipline policy. In addition, the DHO may receive informal complaints about the procedure and correct mistakes locally before the "BP-10" review.

*

**[On appeals, the appropriate reviewing authority shall consider:**

**   a. Whether the Unit Discipline Committee or the Discipline Hearing Officer substantially complied with the regulations on inmate discipline;**

**   b. Whether the Unit Discipline Committee or Discipline Hearing Officer based its decision on some facts, and if there was conflicting evidence, whether the decision was based on the greater weight of the evidence; and]**

The reviewing official's review is limited to determining if the UDC or DHO could have rationally concluded that the evidence supports the decision, and not necessarily whether the reviewing official would have made the same decision had that official been a part of the UDC or DHO proceedings.

**   [c. Whether an appropriate sanction was imposed according to the severity level of the prohibited act, and other relevant circumstances.]**

The investigator, UDC members, DHO reporting officer, and staff

representative may not investigate or assist in preparing the response to administrative appeals from UDC or DHO actions.

P.S. 5270.07
December 29, 1987
Chapter 8, Page 2

Where a remand is directed, the appropriate Unit Discipline Committee or DHO is bound by the original sanction(s), except where the remand is made specifically because of the sanction (in which case the reviewing official
*   shall give directions as to the sanction), or where the inmate's behavior or activity since the first hearing is determined by the Hearing Officials to justify an increase or decrease in such sanction(s).  The intervening behavior or activity and the reasons for an increase or decrease in the sanction(s) imposed by the UDC or DHO must be documented in the hearing record.                                                                                    *

Part 542 refers to P.S. 1330.7, Administrative Remedy Procedure for Inmates.  The UDC or DHO is to ensure that an inmate is provided written notice of the decision.  This notice may be provided either by the chairman of the UDC or by the DHO at the close of the hearing, or by other designated staff following the hearing.

2.  When an appeal of a disciplinary action results in the original sanction being replaced by a suspended sanction, that suspension, whenever possible, runs from the date that the original disciplinary sanction was imposed.

3.  When an inmate files a Regional or Central Office appeal of a disciplinary action, staff in those offices may request copies of disciplinary records.  Each Warden shall designate a staff member (ordinarily the DHO's Clerk) to be responsible for assuring that copies of disciplinary records sent for review or appeal are complete; i.e., that confidential information, all witness and notice of rights forms, all staff memorandums concerning the incident, investigative reports, any dissenting report, the DHO certification (checklist), are included.  All documentation will be forwarded to the appropriate office within 3 working days of the receipt of request.

CHAPTER 9
SPECIAL HOUSING UNITS

Each institution having the need for facilities to house inmates separate from the general population will establish a special housing unit consisting of two categories of cells:  administrative detention and disciplinary segregation.  (Note:  Some institutions may also have a facility for long-term control unit programs - see Control Unit Programs Program Statement.)

\* **Staff must limit the access between female and male inmates housed in Special Housing Units**.  Female and male inmates are not to be assigned to cells on the same range, assigned as orderlies on opposite gender ranges or to work together in common areas, assigned to exercise groups with opposite gender inmates, etc.
A physical separation between female and male inmates must be continually maintained except in an emergency.                                                      \*

Disciplinary Segregation Status.  A form of separation from the general population in which inmates who commit serious violations of Bureau rules are confined by the Discipline Hearing Officer, for specified periods of time, in a cell removed from the general population.  The DHO imposes the sanction of disciplinary segregation only upon determining that no other available disposition will adequately achieve the purpose of punishment and deterrence necessary to regulate an inmate's behavior within acceptable limits.

Administrative Detention Status.  A form of separation from the general population used when the continued presence of the inmate within the general population would pose a serious threat to life, property, self, staff or other inmates, or to the security or orderly running of the institution.  This housing status may also include inmates who require protective custody, those who cannot be placed in local population because they are en route to another institution (holdovers), and those who are awaiting a hearing before the Unit Discipline Committee or Discipline Hearing Officer.  Administrative detention status is a non-punitive status in which restricted conditions of confinement are required only to ensure the safety of inmates or others, the protection of property, or the security or orderly running of the institution.

Special Housing Units will be maintained in accordance with the policies and procedures contained in this Program Statement.  Placement of Youth Corrections Act or Pretrial inmates in Special Housing Units is governed by the Youth Corrections Act (YCA) Institutions and Programs Program Statement and the Pretrial Inmates Program Statement.  See Chapter 10 for a sample of the Special Housing Unit Record.

## DISCIPLINARY SEGREGATION

1.   [JUSTIFICATION FOR PLACEMENT IN DISCIPLINARY SEGREGATION AND REVIEW OF INMATES IN DISCIPLINARY SEGREGATION §541.20

   a.  Except as provided in paragraph (b) of this section, an inmate may be placed in disciplinary segregation only by order of the Discipline Hearing Officer following a hearing in which the inmate has been found to have committed a prohibited act in the Greatest, High, or Moderate Category, or a repeated offense in the Low Moderate Category.  The DHO may order placement in disciplinary segregation only when other available dispositions are inadequate to achieve the purpose of punishment and deterrence necessary to regulate an inmate's behavior within acceptable limits.

   b.  The Warden may temporarily (not exceeding five days) move an inmate to a more secure cell (which may be in an area ordinarily set aside for disciplinary segregation and which therefore requires the withdrawal of privileges ordinarily afforded in administrative detention status, until a hearing before the DHO can be held) who:

       (1)  is causing a serious disruption (threatening life, serious bodily harm, or property) in administrative detention,

       (2)  cannot be controlled within the physical confines of administrative detention, and

       (3)  upon advice of appropriate medical staff, does not require confinement in the institution hospital for mental or physical treatment, or who would ordinarily be housed in the institution hospital for mental or physical treatment, but who cannot safely be housed there because the hospital does not have a room or cell with adequate security provisions.

   The Warden may delegate this authority no further than to the official in charge of the institution at the time the move is necessary.]

   A fully documented report (Temporary Placement in Disciplinary Segregation Order - see Chapter 10) shall be immediately forwarded to the Inmate Central File.

**[c.  The Segregation Review Official (SRO) (see §541.16(d) shall conduct a hearing and formally review the status of each  inmate who spends seven continuous days in disciplinary segregation and thereafter shall review these cases on the record in the inmate's absence each week and shall conduct a hearing and formally review these cases at least once every 30 days.  The inmate appears before the SRO at the 30-day hearings, unless the inmate waives the right to appear.  A waiver may be in writing, signed by the inmate, or if the inmate refuses to sign a waiver, it shall be shown by a memorandum signed by staff and witnessed by a second staff member indicating the inmate's refusal to appear at the hearing.  Staff shall conduct a psychiatric or psychological assessment, including a personal interview, when disciplinary segregation continues beyond 30 days.  The assessment, submitted to the SRO in a written report, shall address the inmate's adjustment to surroundings and the threat the inmate poses to self, staff and other inmates.  Staff shall conduct a similar psychiatric or psychological assessment and report at subsequent one-month intervals if segregation continues for this extended period.]**

Section 541.16(d) is located in Chapter 7 of this Program Statement.  The required reviews are to be recorded on the Special Housing Review form.  Chapter 10 has a copy of both the Special Housing Review and the Waiver of Appearance forms.

**[d.  The Segregation Review Official may release an inmate from disciplinary segregation earlier than the sanction initially imposed upon finding that continuation in disciplinary segregation is no longer necessary to regulate the inmate's behavior within acceptable limits or for fulfilling the purpose of punishment and deterrence which initially resulted in the inmates placement in disciplinary segregation status.  The SRO may not increase any previously imposed sanction.]**

The SRO shall consult with the Captain and the DHO, if reasonably available, prior to releasing an inmate from disciplinary segregation.  The SRO shall always notify the DHO or early releases from segregation, and the reasons therefor.

## 2. [CONDITIONS OF DISCIPLINARY SEGREGATION §541.21.

**a.  Disciplinary segregation is the status of confinement of an inmate housed in** a special housing unit in a cell either alone or with other inmates, separated from the general population.  Inmates housed in disciplinary segregation have significantly fewer privileges than those house in administrative detention.

b.  The Warden shall maintain for each segregated inmate basic living levels of decency and humane treatment, regardless of the purpose for which the inmate has been segregated.  Living conditions may not be modified for the purpose of reinforcing acceptable behavior and different levels of living arrangements will not be established.  Where it is determined necessary to deprive an inmate of a usually authorized item, staff shall prepare written documentation as to the basis for this action, and this document will be signed by the Warden, indicating the Warden's review and approval.

c.  The basic living standards for segregation are as follows:

(1)  <u>Segregation Conditions.</u>  The quarters used for segregation must be well-ventilated, adequately lighted, appropriately heated and maintained in a sanitary condition at all times.  All cells must be equipped with beds.  Strip cells may not be a part of the segregation unit.  Any strip cells which are utilized must be a part of the medical facility and under the supervision and control of the medical staff.]

The beds may be securely fastened to the floor or wall of the cell.

**[(2) <u>Cell Occupancy.</u>  The number of inmates confined to each cell or room in segregation should not exceed the number for which the space was designated.  The Warden may approve excess occupancy if the Warden finds there is a pressing need for this action, and that other basic living standards of this subsection can still be maintained.**

**(3)  <u>Clothing and Bedding.</u>  An inmate in segregation may wear normal institution clothing but may not have a belt.  Staff shall furnish a mattress and bedding.  Cloth or paper slippers may be substituted for shoes at the discretion of the Warden.  An inmate may not be segregated without clothing, mattress, blankets and pillow, except when prescribed by the medical officer for medical or psychiatric reasons.]**

(a)  Staff shall conduct a thorough search (body and property) of the inmate upon admission to and at any time of movement into the unit to prevent the introduction and passage of contraband.  Other searches in the unit may be conducted according to circumstances and in accordance with the relevant provisions of the Custodial (Correctional Services) Manual (P.S. 5500.1) and Searches of Housing Units, Inmates, and Inmate Work Areas (P.S. 5521.3).

(b)  If an inmate is so seriously disturbed that the inmate is likely to destroy clothing or bedding or create a disturbance which would be seriously detrimental to others, the Medical Department shall be notified immediately and a regimen of treatment and control instituted with the concurrence of the Medical Officer, in consultation with mental health staff.

[Inmates in special housing status will be provided, as nearly as practicable, the same opportunity for the issue and exchange of clothing, bedding, and linen, and for laundry as inmates in the general population. Exceptions to this procedure may be permitted only when found necessary by the Warden or designee.  Any exception, and the reasons for this, must be recorded in the unit log.]

Any exception should also be documented on the reverse side of the BP-292(52) (Chapter 10, page 13).

   [(4)  <u>Food.</u>  Staff shall give a segregated inmate nutritionally adequate meals, ordinarily from the menu of the day for the institution.  Staff may dispense disposable utensils when necessary.]

See Food Service Manual (P.S. 4700.2) for standards and guidelines for feeding in Special Housing Units.

   [(5)  <u>Personal Hygiene.</u>  Segregated inmates shall have the opportunity to maintain an acceptable level of personal hygiene.  Staff shall provide toilet tissue, wash basin, tooth brush, eyeglasses, shaving utensils, etc., as needed.  Staff may issue a retrievable kit of toilet articles.  Each segregated inmate shall have the opportunity to shower and shave at least three times a week, unless these procedures would present an undue security hazard.  This security hazard will be documented and signed by the Warden, indicating the Warden's review and approval.

Inmates in special housing will be provided, where practicable, barbering and hair care services.  Exceptions to this procedure may be permitted only when found necessary by the Warden or designee.

   (6)  <u>Exercise.</u>  Staff shall permit each segregated inmate no less than five hours exercise each week.  Exercise should be provided in five one-hour periods, on five different days, but if circumstances require, one-half hour periods are acceptable if the five-hour minimum and different days schedule is maintained.  These provisions must be carried out unless compelling security or safety reasons dictate otherwise.  Institution staff shall document these reasons.]

If weather and resources permit, the inmate shall receive outdoor exercise periods.  Based on security considerations, weight training equipment is not available to inmates in administrative detention and disciplinary segregation status.

[Exercise periods, not to exceed one week, may be withheld from an inmate by  order of the Warden, following a hearing, and recommendation, before a person certified in the discipline hearing officer procedures.  This hearing must be held in accordance with the provisions of §541.17, following those provisions which are appropriate to these circumstances, and only upon a finding by the person conducting the hearing that the

**actions of the segregated inmate pose a threat to the safety or health conditions of the unit.]**

Only a person certified to conduct DHO hearings may hold these hearings.

An inmate's exercise period may be withheld the day of a severely disruptive incident under the first paragraph of this section (6), since the policy requires exercise be provided in five one-hour periods, on five different days.  This section further states these provisions must be carried out unless security or safety reasons dictate otherwise, with these reasons documented by staff.

Where staff believe the inmate's actions require exercise periods to be withheld for a further period (not to exceed one week), the inmate should be given the required 24-hours advance written notice of the hearing before the DHO may then hold a separate hearing on whether the inmate's exercise periods should be withheld.  This hearing should generally meet the requirements of §541.17 (e.g., affording a staff representative, right to call witnesses).  When this is not possible, the DHO should document in the committee's report  the reasons for not adhering to the requirements of §541.17. The DHO shall forward his written recommendation, with reasons, for withholding exercise  privileges to the Warden for final decision.

   **[(7)  <u>Personal Property.</u>  Institution staff shall ordinarily impound personal property.**

   **(8)  <u>Reading Material</u>.  Staff shall provide a reasonable amount of non-legal reading material, not to exceed five books per inmate at any one time, on a circulating basis.  Staff shall provide the inmate opportunity to possess religious scriptures of the inmate's faith.  As to legal materials, see Part 543, Subpart B.]**

Part 543, Subpart B refers to P.S. 1315.3, Inmate Legal Activities.

   **[(9)  <u>Supervision</u>.  In addition to the direct supervision afforded by the unit officer, a member of the medical department and one or more responsible officers designated by the Warden (ordinarily a Lieutenant) shall see each segregated inmate daily, including weekends and holidays. Members of the program staff, including unit staff shall arrange to visit inmates in special housing within a reasonable time after receiving the inmate's request.]**

Inmates are to be afforded the opportunity to continue taking medication prescribed for them while in special housing.

In addition to the above visits, each Warden shall establish procedures to ensure periodic visits by representatives of the different program areas.

   **[(10)  <u>Correspondence and Visits.</u>  As to correspondence privileges, see Part 543, Subpart B.  Staff shall make reasonable effort to notify approved social visitors of any necessary restriction on ordinary visiting procedures so that they may be spared disappointment and unnecessary inconvenience.  If ample time for correspondence exists, staff may place the burden of this notification to visitors on the inmate.  As to general visiting and telephone privileges, see Part 540, Subpart D and Subpart I.**

In respect to legal, religious, and privileged out-going mail, the relevant regulations must be followed by institution staff (see Parts 540, 543, and 548 of this Chapter).]

Part 540, Subpart B refers to P.S. 5265.8, Correspondence Regulations; Part 540, Subpart D refers to P.S. 5267.4, Visiting Regulations; Part 540, Subpart 1 refers to P.S. 5264.3, Telephone Regulations for Inmates; Part 543 refers to P.S. 1315.3, Inmate Legal Activities; Part 548 refers to P.S. 5360.5, Religious Belief and Practices of Committed Offenders.

## ADMINISTRATIVE DETENTION

1.   [**ADMINISTRATIVE DETENTION §541.22.**  Administrative detention is the status of confinement of an inmate in a special housing unit in a cell either by self or with other inmates which serves to remove the inmate from the general population.

   a.  Placement in Administrative Detention.  The Warden may delegate authority to place an inmate in administrative detention to Lieutenants. Prior to the inmate's placement in administrative detention, the Lieutenant is to review the available information and determine whether the inmate's placement in administrative detention is warranted.  The Warden may place an inmate in administrative detention when the inmate is in holdover status (i.e., en route to a designated institution) during transfer, or is a new commitment pending classification.  The Warden may also place an inmate in administrative detention when the inmate's continued presence in the general population poses a serious threat to life, property, self, staff, other inmates or to the security or orderly running of the institution and when the inmate:

      (1)    Is pending a hearing for a violation of Bureau regulations;

      (2)    Is pending an investigation of a violation of Bureau regulations;

      (3)    Is pending investigation or trial for a criminal act;

      (4)    Is pending transfer;

      (5)    Requests admission to administrative detention for the inmate's own protection, or staff determines that admission to or continuation in administrative detention is necessary for the inmate's own protection (see §541.23); or

      (6)    Is terminating confinement in disciplinary segregation and placement in general population is not prudent.  The Segregation Review  Official is to advise the inmate of this determination and reason for such action.]

The review must be separate from the initial hearing before the DHO which resulted in the inmate's placement in disciplinary segregation.

\*          (a)   **[(i)  Except for pretrial inmates or inmates in a control unit program, staff ordinarily within 90 days of an inmate's placement in post-disciplinary detention shall either return the inmate to the general inmate population or request regional level assistance to effect a transfer to a more suitable institution.]**                                                   \*

On occasion, court requirements or similar constraints require an inmate's retention beyond 90 days (for example, the inmate cannot be transferred due to pending charges).  Whenever it is necessary to hold an inmate in post-disciplinary detention beyond 90 days, the Regional Director is to be notified.

Administrative type institutions are facilities to which inmates are assigned for factors other than security, e.g., mental health reasons, short term inmates, etc. (see the Program Statement on the Security Designation and Custody Classification System).  See the Program Statement on Pretrial Inmates, for procedures in regards to this category.

(i)   If an inmate is unable to be placed into the general population, the reason is documented and the case, with all relevant material, is referred to the appropriate Regional Director, Attention: Regional Correctional Services Administrator.  The Correctional Services Administrator will review the case with the Regional Designator, and a recommended placement will then be given to the Regional Director.

(ii)   All Central Inmate Monitoring Cases (CIM) cases will receive a CIM clearance before transfer, under the provisions of the current Program Statement on the Central Inmate Monitoring System.

(iii)   A Regional Director may order the transfer of post-disciplinary detention cases within that Region, or to other Regions with the concurrence of the receiving Regional Director.

(b)   **[(ii)  The Assistant Director, Correctional Programs Division, shall review for purpose of making a disposition, the case of an inmate not transferred from post-disciplinary detention within the time frame specified in paragraph (a) of this section.]**

Referrals to the Assistant Director are made only in the event that the appropriate Regional Director is unable to resolve the situation within the 90-day period.  When this occurs, a referral will be made within 10 days by the Regional Director to the Assistant Director.

\*          (c)   **[(iii)   Staff in a control unit will attempt to adhere to the 90-day limit for an inmate's placement in post-disciplinary detention. Because security needs required for an inmate in a control unit program may not be available outside of post-disciplinary detention, the Warden may approve an extension of this placement upon determining in writing that it is not practicable to release the inmate to the general inmate population or to effect a transfer to a more suitable institution.]**

          (d)   **[(iv)   The appropriate Regional Director and the Assistant Director, Correctional Programs Division, shall review (for purpose of making a disposition) the case of an inmate in a control unit program not transferred from post-disciplinary detention within the 90-day time frame specified in paragraph (a)(6)(iii) of this section.  A similar, subsequent review shall be conducted every 60-90 days if post-disciplinary detention continues for this extended period.]**          \*

          The Executive Panel, composed of the appropriate Regional Director and the Assistant Director, Correctional Programs Division, shall review the status of an inmate who is in post-disciplinary detention status over 90 days at the same time they review (every 60-90 days) the status of inmates in the Control Unit (see the Program Statement on Control Unit Programs).

     **[b.   <u>Administrative Detention Order Detailing Reasons For Placement</u>.  The Warden shall prepare an administrative detention order detailing the reasons for placing an inmate in administrative detention, with a copy given to the inmate, provided institutional security is not compromised thereby.  Staff shall deliver this order to the inmate within 24 hours of the inmate's placement in administrative detention, unless this delivery is precluded by exceptional circumstances.  An order is not necessary for an inmate placed in administrative detention when this placement is a direct result of the inmate's holdover status.]**

     Ordinarily the Warden will delegate authority for this placement action to Lieutenants.

The order is also given to members of the inmate's unit or team. Distribution of copies shall be as indicated on the order.  See Chapter 10 for a copy of the Administrative Detention Order.


[c. **Review of Inmates Housed in Administrative Detention**.

   **(1) Except as otherwise provided in paragraphs c(2) and c(3) of this section, the Segregation Review Official will review the status of inmates housed in administrative detention.  The SRO shall conduct a record review within three work days of the inmate's placement in administrative detention and shall hold a hearing and formally review the status of each inmate who spends seven continuous days in administrative detention, and thereafter shall review these cases on the record (in the inmate's absence) each week, and shall hold a hearing and review these cases formally at least every 30 days.  The inmate appears before the SRO at the hearing unless the inmate waives the right to appear.  A waiver may be in writing, signed by the inmate, or if the inmate refuses to sign a waiver, it shall be shown by a memorandum signed by staff and witnessed by a second staff member indicating the inmate's refusal to appear at the hearing.**

**Staff shall conduct a psychiatric or psychological assessment, including a personal interview, when administrative detention continues beyond 30 days. The assessment, submitted to the SRO in a written report, shall address the inmate's adjustment to surroundings and the threat the inmate poses to self, staff and other inmates.  Staff shall conduct a similar psychiatric or psychological assessment and report at subsequent one-month intervals should detention continue for this extended period.  Administrative detention is to be used only for short periods of time except where an inmate needs long-term protection (see §541.23), or where there are exceptional circumstances, ordinarily tied to security or complex investigative concerns.  An inmate may be kept in administrative detention for longer term protection only if the need for such protection is documented by the SRO.  Provided institutional security is not compromised, the inmate shall receive at each formal review a written copy of the SRO's decision and the basis for this finding.  The SRO shall release an inmate from administrative detention when reasons for placement cease to exist.]**

\*   Ordinarily, these status reviews will be conducted by the Captain, but the Warden may designate other staff such as the Operations Lieutenant of the Administrative Detention Unit or members of the inmate's unit or team to conduct this review.  Staff conducting these status reviews must be certified in inmate discipline matters.                                      \*

The required reviews are to be recorded on the Special Housing Review form. Chapter 10 has a copy of both the Special Housing Review and the Waiver of Appearance forms.

   **[(2)  The Warden shall designate appropriate staff to meet weekly with an inmate in administrative detention when this placement is a direct result of the inmate's holdover status.  Staff shall also review this type of case on the record each week.]**

Staff are to place in the inmate central file documentation of the weekly personal staff contacts and of the record review.

   **[(3) When an inmate is placed in administrative detention for protection, but not at that inmate's request, the Warden or designee is to review the inmate's status within two work days of this placement to determine if continued protective custody is necessary.  A formal hearing is to be held within seven days of the inmate's placement (see §541.23, Protection Cases).]**

\*       §541.23 is located on page 10 of this Chapter.  These reviews and hearings will be conducted by a staff member designated by the Warden, who may designate the DHO, Captain, or any other person with special knowledge in this area.  This person must be certified in discipline procedures.        \*

   **[d.  <u>Conditions of Administrative Detention.</u>  The basis level of conditions as described in §541.21(c) for disciplinary segregation also apply to administrative detention.  If consistent with available resources and the security needs of the unit, the Warden shall give an inmate housed in administrative detention the same general privileges given to inmates in the general population.  This includes, but is not limited to, providing an inmate with the opportunity for participation in an education program, library services, social services, counseling, religious guidance and recreation.  Unless there are compelling reasons to the contrary, institutions shall provide commissary privileges and reasonable amounts of personal property.  An inmate in administrative detention shall be permitted to have a radio, provided that the radio is equipped with ear plugs.  Exercise periods, at a minimum, will meet the level established for disciplinary segregation and will exceed this level where resources are available.  The Warden shall give an inmate in administrative detention visiting, telephone, and correspondence privileges in accordance with Part 540 of this Chapter.**

**The Warden may restrict for reasons of security, fire safety, or housekeeping the amount of personal property that an inmate may retain**

**while in administrative detention.]**

The Appendix to this Chapter contains a listing of that personal property which is ordinarily allowed in Administrative Detention.  Part 540 refers to P.S. 5267.4, Visiting Regulations, P.S. 5264.3, Telephone Regulations for Inmates, and P.S. 5265.8,Correspondence.

(1)   It is suggested that each institution have a quantity of inexpensive ear plugs available to ensure that radio noise level is controlled.  Where a Warden believes that a radio will present a serious security problem in respect to contraband, the Warden may purchase individual radios, to remain in each cell.  Any damage or destruction to such radios would be grounds for disciplinary action.

(2)   If weather and resources permit, the inmate shall receive outdoor exercise periods.

(3)   Failure of an inmate to maintain acceptable living and sanitation standards may result in a disciplinary report (Code 317) being written and sanctions imposed.

2.   [PROTECTION CASES §541.23.

   a.   Staff may consider the following categories of inmates as protection cases:

      (1)   Victims of inmate assaults;
      (2)   Inmate informants;]

Inmates who have provided information to the institution staff or any law enforcement agency concerning criminal activities by others.

   [(3) Inmates who have received inmate pressure to participate in sexual activity;

   (4)   Inmates who seek protection through detention, claiming to be former law enforcement officers, informants, or others in sensitive law enforcement positions, whether or not there is official information to verify the claim;

   (5)   Inmates who have previously served as inmate gun guards, dog caretakers, or in similar positions in state or local correctional facilities;

   (6)   Inmates who refuse to enter the general population because of alleged pressures from other unidentified inmates;

   (7)   Inmates who will not provide, and as to whom staff cannot determine, the reason for refusal to return to the general population;

   (8)   Inmates about whom staff has good reason to believe the inmate is in serious danger of bodily harm.]

Inmates who request protection, or who agree with the need for separation for protection reasons, will so indicate on the form (Administrative Detention Order - see Chapter 10) documenting placement in administrative detention.

[b.   Inmates who are placed in administrative detention for protection, but not at their own request or beyond the time when they feel they need to be detained for their own protection, are entitled to a hearing, no later than seven days from the

**time of their admission (or from the time of their detention beyond their own consent).  This hearing is conducted in accordance with the procedural requirements of §541.17, as to advance written notice, staff representation, right to make a statement and present documentary evidence, to request witnesses, to be present throughout the hearing, and advance advisement of inmate rights at the hearing, and as to making a record of the proceedings.]**

This hearing may be conducted by a DHO, by the Captain, or by any other person certified in inmate discipline procedures.  When practicable, the * hearing is to be provided prior to the inmate's placement in administrative detention.  When this is not practicable and an inmate is placed in administrative detention for protection, but not at that inmate's own request, the Warden or designee (ordinarily the Captain) shall review the placement within two work days of the placement to determine if continued protective custody is necessary.  If continued placement if warranted, the formal hearing described above is to occur within seven days of the inmate's placement.

**[c.  Ordinarily, staff may place an inmate in administrative detention as provided in paragraph (a) of this rule relating to protection cases, for a period not to exceed 90 days.  Staff shall clearly document in the record the reasons for any extension beyond this 90-day period.]**

Inmates in Categories a(1-5) of this section (on protection cases) are not to be extended beyond 90 days unless there are exceptional circumstances and approval is obtained from the appropriate Regional Correctional Services Administrator.  Inmates in Categories a(6, 7, and 8) may be extended by the Warden provided there is a clear documentation of need, and provided that the inmate is otherwise appropriately classified for that facility.

**[d.  Where appropriate, staff shall first attempt to place the inmate in the general population of their particular facility. Where inappropriate, staff shall clearly document the reason(s) and refer the case, with all relevant material, to their Regional Director, who, upon review of the material, may order the transfer of a protection case.]**

The institution referral is directed to the attention of the Regional Correctional Services Administrator.  This person will review the case with the Regional Designator and a recommended placement will then be given to the Regional Director.

All Central Inmate Monitoring Cases (CIM) cases will receive a CIM clearance before transfer, under the provisions of P.S. 5180.2, Central Inmate Monitoring System.

Transfer of a protection case does not require concurrence of the receiving Regional Director.

```
                                               P.S. 5270.07
                                            December 29, 1987
                                            Chapter 9, Appendix
```

<u>PERSONAL PROPERTY ORDINARILY ALLOWED IN ADMINISTRATIVE DETENTION</u>
(If not otherwise a threat to institution security)

1.  Bible, Koran, or other scriptures
2.  Books, Paperback
3.  Cigarettes
3.  Coffee
5.  Cups, Drinking
6.  Eye Glasses
7.  Fruits
8.  Legal Materials
9.  Magazines
10. Magic Shave
11. Mail
12. Newspapers
13. Personal Hygiene Items (except razors)[1]
14. Photo Albums
15. Authorized Religious Medals/Headgear (e.g., kufi)
16. Shoes, Shower
17. Shoes, Tennis (except those with steel shanks)
18. Snack Foods
19. Soft Drinks, Powdered
20. Stationery/Stamps
21. Sugar Cubes
22. Tobacco, Chewing
23. Tobacco, Smoking
24. Wedding Band
25. Radio with ear plugs
26. Watch

In some instances, it will be necessary for the Chief Executive Officer to develop local limitations on the quantity and type of personal property allowed in administrative detention.  Personal property may be limited or withheld for reasons of security, fire safety, or housekeeping, documented in unit records.

[1] Razors shall be controlled by special housing unit staff.  Only disposable razors will be used.

CHAPTER 10
RECORDS AND FORMS

1. RECORDS.

    a.  A permanent log will be maintained in the segregation unit.
All admissions will be recorded indicating the inmate's name,
register number, housing location, date admitted, reasons for
admission, tentative release date, special medical or psychiatric
problems or needs, and the authorizing official.  All releases
from the unit will be similarly recorded.  All persons visiting
the unit will sign a separate log, giving time and date of visit.
Unusual activity or behavior of individual inmates will be
recorded in the log, with a follow-up memorandum sent through the
Warden to the inmate's file.  This will include any misbehavior
which should be recorded and reported to the Discipline Hearing
Officer/Segregation Review Official.

    b.  A Special Housing Unit Record (BP-292(52)) will also be
maintained in accordance with the following instructions and sent
to the inmate's central file.

        (1) The key at the bottom of the form is self-explanatory.

        (2) The basic information at the top of the form, with the
exception of the date and time of release, will be completed by
the Officer in Charge/Unit Officer at time of admittance.  The
Medical Department is to be notified as soon as practicable when
the inmate says that he is presently on medication.

        (3) The form providers space for seven (7) days.  The date
column will be recorded daily, the shift line will be completed
commencing so as to coincide with the date and time the inmate is
admitted as reflected at the top of the form.

        (4) The Officer in Charge/Unit Officer will sign the form in
the space provided for that particular shift.  Initials of the
officer are not acceptable.

        (5) The Physician's Assistant will indicate, by signature in
the proper space, each time the inmate is seen by the Physician
Assistant. At a minimum, the record sheet must be signed at least
once each day by the Physician Assistant.

        (6) The form is designed for a seven (7) day period. If
confinement to segregation continues beyond a seven (7) day
period, a new form will be prepared and the completed from
forwarded to the inmate's central file.  Date and time of release
will be recorded on the final form.

        (7) Additional comments may be noted on the reverse of the
form and in each case must be dated and include the signature and
title of the person making the comment.

2.   <u>FORMS.</u>  The forms listed in this section may be ordered through regular forms

ordering procedures.  Staff are to reproduce these forms locally until the initial order is received.

     a.   Incident Report BP-288,

     b.   Inmate Rights at Discipline Hearing BP-293,

     c.   Notice of Discipline Hearing Before the Discipline Hearing Officer (DHO) BP-294,

     d.   Duties of Staff Representative BP-306,

     e.   Waiver of Appearance BP-307,

     f.   Discipline Hearing Officer (DHO) Report BP-304,

     g.   Administrative Detention Order BP-308,

     h.   Special Housing Unit Record BP-292,

     i.   Special Housing Review BP-295,

     j.   Temporary Placement in Disciplinary Segregation Order BP-321.

P.S. 5270.07
December 29, 1987
Chapter 10, Page 3

**Incident Report**
**BP-288(52)**
**JANUARY 1988**
BP-S288(52)
MAY 94

P.S. 5270.07
December 29, 1987
Chapter 10, Page 4

## PART III - INVESTIGATION

P.S. 5270.07
December 29, 1987
Chapter 10, Page 5 & 6

BP-S293   "Inmate Rights At Discipline Hearing"
Available on BOPDOCS

P.S. 5270.07
December 29, 1987
Chapter 10, Page 7

BP-S294     "Noticed of Discipline Hearing Before the Discipline
            Hearing Officer (DHO)
Available on BOPDOCS

P.S. 5270.07
December 29, 1987
Chapter 10, Page 8

BP-S306   "Duties of Staff Representatives"
Available on BOPDOCS

P.S. 5270.07
December 29, 1987
Chapter 10, Page 9

**Waiver of Appearance**
**BP-307(52)**
JANUARY 1988

_____
                                    Institution

I _____ have been advised of my right to appear before
        Name/Register No

the _____ on _____ I do not wish to
        UDC, DHO, SRO                          Date

appear, and I hereby waive that right.


_____
                        Inmate Signature


_____
                        Register Number

Witness: _____
                Staff Member Printed Name Signature


_____
                        Date
_____

I saw inmate _____ at _____ at
                Inmate Name/Register No.                        Time/Date
_____ and advised the inmate of the right to appear
Specific Location, eg. Cell No.
before the _____ on _____ . The inmate declined
                UDC, DHO, SRO                  Date
to appear at the hearing, but refused to sign a Waiver of Appearance.


_____
                        Staff Member Printed Name/Signature


_____
                        Second Staff Witness Printed Name/Signature


                                            BP-307(52)
                                            JANUARY 1988

P.S. 5270.07
December 29, 1987
Chapter 10, Page 10 & 11

BP-S304   "Discipline Hearing Officer (DHO) Report"
Available on BOPDOCS

BP-S308   "Administrative Detention Order"
Available on BOPDOCS

P.S. 5270.07
December 29, 1987
Chapter 10, Page 13

BP-S292   "Special Housing Unit Record"
Available on BOPDOCS

BP-S295   "Special Housing Review"
Available on BOPDOCS

P.S. 5270.07
December 29, 1987
Chapter 10, Page 15


BP-S321   "Temporary Placement in Disciplinary Segregation Order"
Available on BOPDOCS

```
                                     P.S. 5270.07
                                December 29, 1987
                                Chapter 11, Page 1
```

INMATE DISCIPLINE (SPECIAL MANAGEMENT INMATES)

STANDARDS          REFERENCE IN PROGRAM STATEMENT

| CAC* | CHAPTER | PAGE | SECTION | COMMENTS |
|------|---------|------|---------|----------|
| 2-4214 | ...9.........1-11-........- | | | |
| 2-4215 | ...9.........6...........a | | | |
| 2-4215 | 9 | 8 | c(1) | |
| | 9 | 9 | c(3) | |
| | 9 | 10 | b | |
| 2-4216 | ...9.........1...........1a | | | |
| 2-4218 | ...9.........8...........c | | | |
| 2-4219 | ...9.........8...........c | | | |
| 2-4220 | ...9.........10..........2a | | | |
| | 9 | 10 | b | |
| 2-4221 | ...9.........3...........c(3) | | | |
| | 9 | 4 | c(5) | |
| | 9 | 5 | c(9) | |
| 2-4222 | ...9.........3...........b | | | |
| 2-4223 | ...9.........4...........c(4) | | | |
| 2-4224 | ...9.........4...........c(5) | | | |
| 2-4225 | ...9.........3...........c(3) | | | |
| | 9 | 4 | c(5) | |
| 2-4226 | ...9.........5...........c(10) | | | |
| | 9 | 9 | d | |
| 2-4227 | ...9.........5...........c(10) | | | |
| | 9 | 9 | d | |
| 2-4228 | ...9.........5...........c(10) | | | |
| 2-4229 | ...9.........9...........d | | | |
| 2-4230 | ...9.........5...........c(8) | | | |
| | 9 | 9 | d | |
| 2-4231 | ...9.........5...........c(8) | | | |
| | 9 | 9 | d | |
| 2-4232 | ...9.........4...........c(6) | | | |
| | 9 | 9 | d | |
| 2-4233 | ...9.........9...........d | | | |
| 2-4234 | ...10........1...........1a | | | |
| 2-4235 | ...9.........5...........c(9) | | | |
| 2-4236 | ................................... | | | PS does not address |
| 2-4237 | ...9.........2...........c | | | |
| | 9 | 8 | c | |

*CAC - Commission on Accreditation for Corrections Standards for Adult          Correctional Institutions (2nd Edition)

INMATE DISCIPLINE (INMATE RULES AND DISCIPLINE)

| STANDARDS | REFERENCE IN PROGRAM STATEMENT | | | COMMENTS |
|---|---|---|---|---|
| CAC* | CHAPTER | PAGE | SECTION | |
| 2-4345 | ...4........1-20.......- | | | |
| 2-4346 | ...2.........1.........2 | | | |
| 2-4347 | ...7.........1.........1b.......... | | | DHO certification test is partially responsive to this standard |
| 2-4348 | ...Chapters 5-8 ....... | | | |
| 2-4349 | ...6........1-4........- | | | |
| 2-4350 | ...5.........1.........1a | | | |
| 2-4351 | ...5.........1.........1a | | | |
| 2-4352 | ...5.........2.........1b | | | |
| 2-4353 | ...9.........8.........c | | | |
| | 9 | 6 | 1a | |
| 2-4354 | ...4.........3.....Sanction D..... | | | Sanction requirements different |
| | 9 | 2 | c | |
| 2-4355 | ...5.........2.......b(1) | | | |
| 2-4356 | ...6.........1.........c | | | |
| | 7 | 3 | d | |
| 2-4357 | ...7.........1.........2a | | | |
| 2-4358 | ...7.........4.........e | | | |
| | 6 | 4 | k | |
| 2-4359 | ...6.........1.........1b | | | |
| | 7 | 1 | 2a | |
| 2-4360 | ...6.........1.........1c | | | |
| | 7 | 3 | d | |
| 2-4361 | ...6.........3.........g | | | |
| | 7 | 7 | g | |
| | 7 | 7 | h | |
| | 6 | 1 | 1 | |
| | 7 | 1 | 1b | |
| 2-4362 | ...7.........2.........b | | | |
| | 7 | 2 | c | |
| 2-4363 | ...7.........2.........c | | | |
| | 6 | 2 | d | |
| 2-4364 | ...6.........2.........f | | | |
| | 7 | 4 | f | |
| 2-4365 | ...6.........3.........g | | | |
| | 7 | 7 | h | |
| | 6 | 2 | f | |
| | 7 | 7 | g | |
| 2-4366 | 10 | 11 | Bottom | |
| | ...6.........2.........f | | | |
| 2-4367 | 7 | 8 | 3 | |
| | ...6.........4.........j | | | |
| 2-4368 | 7 | 7 | i | |
| | ...Chapter 8 ..........- | | | |

*CAC - Commission on Accreditation for Corrections Standards for Adult Correctional Institutions (2nd Edition)